UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| | : | |
| In re | : | Chapter 11 |
| | : | |
| **EMMONS-SHEEPSHEAD BAY** | : | Case No.12-46321 (ESS) |
| **DEVELOPMENT LLC,** | : | |
| | | |
| Debtor. | | |
| | x | |

### SECOND AMENDED PLAN OF REORGANIZATION
### OF EMMONS-SHEEPSHEAD BAY DEVELOPMENT LLC

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
Attorneys for the Debtor
875 Third Avenue
New York, New York 10022
(212) 603-6300

Of Counsel:    A. Mitchell Greene, Esq.
Lori A. Schwartz

Dated: New York, New York
April 5, 2013

**EMMONS-SHEEPSHEAD BAY DEVELOPMENT LLC,** (the "Debtor")

hereby proposes the following second amended plan of reorganization (the "Plan") for the

Debtor's chapter 11 case pursuant to Sections 1121(a), 1122 and 1123 of title 11 of the United

States Code.

## ARTICLE I

## DEFINITIONS

Unless the context otherwise requires (i) the terms set forth in this Article 1 shall

have the following meanings when used in this Plan; (ii) any capitalized term that is used in this

Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the

Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall

include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter

gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit

references in the Plan without reference to a particular document are to the respective section of,

article of, or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other

agreement or document being in a particular form or on particular terms and conditions, means

that such document shall be substantially in such form or substantially on such terms and

conditions except as otherwise stated in the Plan; (vii) any reference to an existing document or

exhibit filed or to be filed means such document or exhibit, as it may have been or may be

amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder"

and other words of similar import refer to the Plan in its entirety rather than to only a particular

{00608854.DOC;5 }

2

portion of the Plan; (ix) the rules of construction set forth in Section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1.    **"Administrative Bar Date"** means the first Business Day that is at least 30 days after the Effective Date.

1.2.    **"Administrative Claim"** means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim, and (iii) which is not an Insured Claim.

1.3.    **"Administrative Expense"** means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under Sections 503(b), 330 or 331 of the Bankruptcy Code.

1.4.    **"Allowed Claim"** means a Claim against the Debtor that (a) has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of

Claim has been filed, that has been or hereafter is listed by the Debtor in its Schedules as

liquidated in amount and not disputed or contingent.

      1.5.    **"Allowed Interest"** means an Interest in the Debtor that has not been

disallowed and is not a Disputed Interest with respect to which (i) a Proof of Interest has been

timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hererafter is

listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

      1.6.    **"Bankruptcy Code"** means title 11 of the United States Code, as

amended from time to time and effective as to cases filed on the Petition Date.

      1.7.    **"Bankruptcy Court"** means the United States Bankruptcy Court for the

Eastern District of New York or the United States District Court for the Eastern District of New

York to the extent it withdraws the reference over all or any portion of this Case pursuant to

Section 157(d) of title 28 of the United States Code.

      1.8.    **"Bankruptcy Fees"** mean all fees and charges assessed against the Estate

under Section 1930 of title 28 of the United States Code.

      1.9.    **"Bankruptcy Rules"** mean (i) the Federal Rules of Bankruptcy

Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the

Eastern District of New York, in either case, as now in effect or hereinafter amended.

      1.10.    **"Bar Date"** means December 18, 2012, the date fixed by Order of the

Bankruptcy Court, subsequent to which a Proof of Claim may not be timely filed.

1.11.  **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.12.  **"Case"** means this case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled: In re Emmons-Sheepshead Bay Development LLC, Case No. 12-46321 (ESS)

1.13.  **"Cash"** means lawful currency of the United States of America.

1.14.  "**Claim**" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(b)  a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.15.  **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests.

1.16.  **"Confirmation"** means the entry of the Confirmation Order.

1.17.  **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that (i) the Confirmation Order becomes a Final Order and (ii) the Confirmation Order is not stayed by an Order of a court of competent jurisdiction.

{00608854.DOC;5 }

1.18. **"Confirmation Order"** means an Order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.19. **"Creditor"** means a holder of an Allowed Claim.

1.20. **"Cure Amount"** means any amount required, pursuant to Sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to an executory contract or unexpired lease for any actual pecuniary loss resulting from a default in respect of an executory contract or unexpired lease.

1.21. **"Debtor"** means Emmons-Sheepshead Bay Development LLC.

1.22. **"Disbursing Agent"** means Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C.

1.23. **"Disclosure Statement"** means the Disclosure Statement for Plan of Reorganization for Emmons-Sheepshead Bay Development LLC , including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.24. **"Disputed Claim"** means (a) any claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; (b) any Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; provided however, that until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be

{00608854.DOC;5 }

deemed to be a Disputed Claim in its entirety if, (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules.

1.25.   **"Disputed Claim Reserve"** means the segregated account or accounts established by the Disbursing Agent pursuant to Section 8.7 of the Plan.

1.26.   **"Effective Date"** means the first Business Day after the Confirmation Order becomes a Final Order.

1.27.   **"Estate"** means the estate created on the Petition Date pursuant to Section 541 of the Bankruptcy Code.

1.28.   **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.29.   "**Governmental Unit**" means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

{00608854.DOC;5 }

7

1.30. **"Insider"** means an insider of the Debtor as determined in accordance with Section 101(31) of the Bankruptcy Code.

1.31. **"Insider Claim"** means an Allowed Claim held by or behalf of an Insider or any successor in interest or assignee thereof.

1.32. **"Legal Holiday"** means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.33. **"Lien"** means lien as defined in Section 101(37) of the Bankruptcy Code.

1.34. **"New York City"** means, collectively the New York City Department of Finance and the New York City Water Board (and any other municipal entities having jurisdiction or taxing authority over the Property), the holder of the Class 2 New York City Secured Tax Claims.

1.35. **"Order"** means an order of the Bankruptcy Court.

1.36. **"Petition Date"** means August 30, 2012, the date on which the Debtor commenced this Case by the filing of its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.37. **"Plan"** means this Plan of Reorganization for Emmons-Sheepshead Bay Development LLC, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.38. **"Post-Petition Tax Claim"** means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or period, all or

{00608854.DOC;5 }

any portion of which occurs or falls within the period from and including the Petition Date

through and including the Effective Date.

1.39.    **"Priority Claim"** means that portion of a claim other than a Priority Tax

Claim, an Administrative Claim, a Secured Claim or Bankruptcy Fees, to the extent entitled to

priority under Section 507 of the Bankruptcy Code.

1.40.    **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit

of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

1.41.    **"Professional"** means all professionals employed by the Debtor under

Section 327 of the Bankruptcy Code.

1.42.    **"Professionals' Fees"** means compensation for services rendered, and

reimbursement of expenses incurred by Professionals as awarded by Final Order following

application in accordance with Sections 330 and 331 of the Bankruptcy Code.

1.43.    **"Proof of Administrative Claim"** means a request for payment of an

Administrative Expense (including fees and expenses allowed under Sections 330 or 331 of the

Bankruptcy Code of duly retained professionals providing services in this Case) filed pursuant to

Section 503 of the Bankruptcy Code.

1.44.    **"Proof of Claim"** means a proof of Claim filed pursuant to Section 501 of

the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.45.    **"Property"** means the real property and improvements thereon located at

3112-3144 Emmons Avenue, Brooklyn, New York 11213.

1.46. **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.47. **"Released Entities"** means, individually and collectively, the Debtor, and each of its respective directors, officers, shareholders, members, partners, agents, employees, representatives, attorneys and other professionals, subsidiaries and affiliates, and any successor in interest in any of them.

1.48. **"Reorganized Debtor"** means, the Debtor on and after the Effective Date.

1.49. **"Sale Proceeds"** means the proceeds received by Debtor on account of the sale of the individual condominium units which shall be utilized to satisfy the SDF Secured Claim.

1.50. **"Schedules"** mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with Section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.51. **"SDF"** means SDF17 Emmons LLC, the holder of the Class 3 SDF Secured Claim.

1.52. **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to Section 506(b) of the Bankruptcy Code, to the extent that it is secured by a lien on property in which the Estate has an interest or that is subject to set-off under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's

interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code.

1.53. **"Secured Tax Claim"** means a Secured Claim for taxes or assessments held by a Governmental Unit, to the extent, if any, that such taxes and assessments are entitled to a security interest under applicable non-bankruptcy law.

1.54. **"Transfer Taxes"** means, without limitation, (i) Kings County or other applicable local real property transfer taxes, (ii) the New York State mortgage recording taxes imposed under Article 11 of the New York State Tax Law, and (iii) and any and all other stamp taxes or similar taxes imposed by the State of New York and/or the County of Kings, which, but for the applicability of Section 1146 (a) of the Bankruptcy Code would be applicable, to any transfer made in accordance with, pursuant to, or in furtherance of the Plan.

1.55. **"Unsecured Claim"** means an Allowed Claim, including a deficiency claim, which is not an Administrative Claim, a Bankruptcy Fee, an Insider Claim, an Insured Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or a Secured Tax Claim.

1.56. **"Unsecured Creditors' Fund"** means, the fund of $100,000 to be established on the Effective Date and to be distributed pro-rata to the holders of Class 4 Unsecured Claims.

## ARTICLE II

## TREATMENT OF UNCLASSIFIED CLAIMS

2.1. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims. Such Claims, to the extent

{00608854.DOC;5 }

Allowed Claims, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

2.2.    **Administrative Bar Date.**  Except as otherwise provided in Sections 2.2, and 2.3 of the Plan, requests for payment of and/or Proofs of Administrative Claims must be filed no later than the Administrative Bar Date.  Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Bar Date, shall be forever barred from asserting such Claims against the Debtor or its Property; provided, however, that Holders of Claims for Administrative Expenses arising in the ordinary course of the Debtor's business need not file Administrative Claims.

2.3.    **Professionals' Compensation and Reimbursement.**  All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to Section 330 of the Bankruptcy Code no later than the Administrative Bar Date.  Any such application timely filed shall be deemed to be a Proof of Administrative Claim.  No later than three days prior to the Confirmation Date, each such Professional shall provide the Debtor and SDF with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to Section 330 of the Bankruptcy Code.  Such estimates shall include estimated sums for the preparation and prosecution of any such application.  Unless otherwise agreed by such claim holder in writing, on the Effective Date SDF shall deliver to , and the Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and expenses in full. Objections to any Professional's application for compensation or reimbursement must be timely

filed and served upon such Professional, and upon the Debtor and the Disbursing Agent in accordance with the Bankruptcy Rules.  Any such objection not timely filed and served shall be deemed to have been waived.  Notwithstanding anything to the contrary, Professional Fees will be capped at the amount of $250,000 and SDF shall only be required to pay the sum of $250,000 for Professional Compensation.

2.4.    **Post-Petition Tax Claims.**    All Proofs of Administrative Claims for Post-Petition Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the later of (i) 30 days following the Effective Date; and (ii) 60 days following the filing of the tax return for such taxes for such tax year or period with the applicable Governmental Unit. Any holder of any Post-Petition Tax Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Debtor or its Property, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, all Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (1) on or prior to the Effective Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Confirmation Date.

2.5.    **Administrative Claims.**    Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business

{00608854.DOC;5 }

days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually

agreed in writing between the Disbursing Agent and the holder of such Claim; provided,

however, that any Administrative Claim incurred by the Debtor in the ordinary course of its

business shall be paid in full or performed by the Debtor in accordance with the terms and

conditions of the particular transaction giving rise to such Administrative Claim and any

agreements relating thereto.

2.6.    **Priority Tax Claims.**  Subject to the provisions of Article 8 of the Plan

with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax

Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such

Governmental Units, all Priority Tax Claims shall be paid by the Disbursing Agent in Cash in

full on the Effective Date.

2.7.    **Bankruptcy Fees.**  All fees and charges assessed against the Debtor under

Section 1930 of title 28 of the United States Code shall be paid by the Disbursing Agent, in Cash

in full as required by statute.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims are classified as set

forth in this Article 3.  A Claim is in a particular Class designated herein only to the extent such

Claim (i) fits within the description of such Class (and is in such other and different Class or

Classes to the extent that the remainder thereof fits within the description of such other Class or Classes) and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

    3.1.    **Class 1 - Priority Claims.**  Class 1 consists of all Priority Claims.

    3.2.    **Class 2  - New York City Secured Tax Claims.**  Class 2 consists of the New York City Secured Tax Claims.

    3.3.    **Class 3 – SDF17 Emmons LLC Secured Claim.**  Class 3 consists of the Secured Claim of SDF.

    3.4.    **Class 4 - Unsecured Claims.**  Class 4 consists of all Unsecured Claims.

    3.5.    **Class 5 – Allowed Interests**.  Class 5 consists of Allowed Interests.

**ARTICLE IV**

**TREATMENT OF UNIMPAIRED CLAIMS**

Allowed Claims in Classes 1 and 2 are not impaired and shall receive the following treatment under the Plan in full settlement, release and discharge thereof.

    4.1.    **Class 1 - Priority Claims.**  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and only to the extent a condominium closing with respect to a pre-petition contract of sale does not occur, in full satisfaction, release and discharge of the Priority Claims, the holders of Priority Claims shall receive the following treatment:  on the Effective Date, or as soon as practicable after such Claims become Allowed Claims, each holder of a Priority Claim shall receive payment from the Disbursing Agent (i) in Cash, in the full amount of its Priority Claim, or (ii) as may be otherwise agreed in writing between the Debtor and the holder of such Claim.

{00608854.DOC;5 }

4.2.    **Class 2 – New York City Secured Tax  Claims.**  Subject to the provisions of Article 8 of the Plan with respect to Disputed Claims, and only to the extent New York City Secured Tax Claims were not paid and satisfied by protective advances made by SDF prior to the Effective Date, on the Effective Date, in full satisfaction, release and discharge of the New York City Secured Claims, the holder of the New York City Secured Claims shall receive cash in the full amount of its Allowed Secured Claims.

## ARTICLE V

## TREATMENT OF IMPAIRED CLAIMS

Allowed Claims in Classes 3 and 4 and Allowed Interests in Class 5 are impaired and shall receive the following treatment under the Plan in full settlement, release and discharge thereof.

5.1.    **Class 3 –SDF17 Emmons Secured Claim.**  After payment is made in full to holders of administrative and priority claims, and the Unsecured Creditors Fund is established in the initial amount of $100,000, SDF shall receive payment in the full amount of its secured claim in the principal sum of $28,000,000 with interest accrued thereon from the sale proceeds of the Debtor's 49 unsold condominium units, 43 parking spaces and marina unit, which payments shall be applied first to accrued interest and then to the principal amount of the claim, inclusive of protective advances made pursuant to the existing loan documents pre or post-petition.   SDF's secured claim shall accrue interest at the rate of 8% per annum.  The Reorganized Debtor and SDF shall execute an amended and restated mortgage in recordable form and an amended and restated note in the amount of $28,000,000 which note shall mature 24 months from the Effective

{00608854.DOC;5 }

16

Date, subject to extension at the sole and absolute discretion of SDF.  On the maturity date, upon

the election of SDF, the Reorganized Debtor shall pay the balance due on the note or convey the

Property to SDF or its designee in full satisfaction of the SDF Secured Claim.

SDF shall receive no repayment on account of its administrative claim, which

claim shall be deemed subordinate to holders of allowed administrative claims, until its secured

claim is paid in full.

In the event the sale proceeds are sufficient to satisfy in full SDF's secured claim

and subordinate administrative claim, any balance available shall be distributed pro-rata to

holders of unsecured claims, including SDF's deficiency claim.

In consideration for the treatment contained herein, and upon receipt by SDF of no

less than $23,500,000 of net proceeds from the sale of units, SDF shall release Jacob Pinson's

personal guarantee of the SDF loan its mortgage on Jacob Pinson's personal residence.

After the Effective Date, SDF pursuant to a consulting agreement with Jacob

Pinson, the managing member of Yachad Enterprises, LLC, the managing member of the Debtor,

Jacob Pinson will be engaged by SDF to assist with the development, construction, marketing

and sale of the condominium units for a two (2) year period.  In connection with the work Pinson

performs as a consultant, he shall receive a monthly consulting fee of $10,000 during the two (2)

year term of the consulting agreement.

In the event SDF receives net sale proceeds of no less than the aggregate amount

of $25,000,000, it shall supplement the unsecured creditors fund by an additional $50,000; in the

event SDF receives net sale proceeds of no less than the aggregate amount of $27,500,000, it

{00608854.DOC;5 }

shall supplement the unsecured creditors fund by an additional $50,000; and in the event SDF

receives net sale proceeds of no less than the aggregate amount of $30,000,000, it shall

supplement the unsecured creditors fund by an additional $200,000.  Notwithstanding anything to

the contrary, any sums paid to supplement the unsecured creditors under this paragraph shall not

be a credit against or an offset to the amount due and owing under the SDF Secured Claim.

      5.2.    **Class 4 - Unsecured Claims.**  Subject to the provisions of Article 8 of the

Plan with respect to Disputed Claims, on the Effective Date, in full satisfaction, release and

discharge of all Allowed Unsecured Claims (including deficiency claims), each holder of an

Allowed Unsecured Claim shall receive payment in cash equal to its pro rata share of the

Unsecured Creditors Fund to be established on the Effective Date in the amount of $100,000 and,

in the event net sale proceeds are sufficient to satisfy the SDF secured and administrative claims,

any balance shall be distributed pro-rata to holders of Allowed Unsecured Claims.

      In the event SDF receives net sale proceeds of no less than the aggregate amount

of $25,000,000, it shall supplement the unsecured creditors fund by an additional $50,000; in the

event SDF receives net sale proceeds of no less than the aggregate amount of $27,500,000, it

shall supplement the unsecured creditors fund by an additional $50,000; and in the event SDF

receives net sale proceeds of no less than the aggregate amount of $30,000,000, it shall

supplement the unsecured creditors fund by an additional $200,000.  Notwithstanding anything to

the contrary, any sums paid to supplement the unsecured creditors under this paragraph shall not

be a credit against or an offset to the amount due and owing under the SDF Secured Claim.

{00608854.DOC;5 }

SDF's deficiency claim, if any, shall be included in Class 4. SDF has agreed to waive any distribution from the Unsecured Creditors Fund on account of its deficiency claim and from any further funding of the unsecured creditors fund unless and until its secured and administrative claims are satisfied in full.

5.3.    **Class 5 – Allowed Interests**.  On the Effective Date, all Allowed Interests shall be extinguished.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1.    **Rejection of Executory Contracts and Unexpired Leases.**  Except for contracts to purchase condominium units, on the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected.

6.2.    **Rejection Claims.**  Allowed Claims arising from the rejection of Executory Contracts and Unexpired Leases of the Debtor pursuant to Section 6.1 of the Plan shall be treated as Unsecured Claims.

6.3.    **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Section 6.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor within 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the

manner provided in such Final Order), or (ii) the Confirmation Date.  Any such Claim not timely

filed and served shall be forever barred from assertion and may not be enforced against the

Debtor, or its Property.

## ARTICLE VII

## IMPLEMENTATION OF THE PLAN

7.1.    **Implementation.**  The Debtor shall take all necessary steps, and perform

all necessary acts, to consummate the terms and conditions of the Plan.  The Confirmation Order

shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code,

directing the Debtor and any other necessary party to execute or deliver or to join in the

execution or delivery of any instrument required to effect a transfer of property required by the

Plan and to perform any act, including the satisfaction of any Lien, that is necessary for the

consummation of the Plan.  Pursuant to Section 1146 of the Bankruptcy Code, the issuance,

transfer, or exchange of any security and the making or delivery of any instrument of transfer in

connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a

stamp tax, real estate transfer tax, mortgage recording tax or similar tax, including, but not

limited to (a) transfer and recording taxes associated with the perfecting of the SDF loan

documents; (b) transfer and recording tax associated with sales of condominium units to

individual purchasers; and (c) condominium purchasers mortgage recording tax incurred in

connection with financing the purchase of a condominium unit, unless mortgage recording tax

shall be deemed exempt in accordance with applicable law.

{00608854.DOC;5 }

7.2.   **Sale of Assets**.  In order to fund the distributions under the Plan, the

Debtor shall consummate the closing and sale of the individual condominium units and apply

the net sale proceeds to SDF with each such sale not be taxed under any law imposing a

stamp or similar tax as provided for in §1146(a) of the Bankruptcy Code.  Each unit shall be

sold free and clear of any and all Liens, Claims, Encumbrances, Interests, bills, or charges

whatsoever, other than the usual and customary utility easements, if any, appearing as of

record or as preserved in this Plan. The selling price for the units will be determined at the sole

discretion of SDF after completing a marketing analysis for the Property.

7.3.   V**esting of Assets.**  Except as otherwise provided in the Plan, and except for

the SDF17 Emmons Secured Claim and the liens securing the SDF17 Emmons Secured Claim

which shall remain in full force and effect on and after the Effective Date, on the Effective Date

all of the assets and properties of the Estate shall vest in the Reorganized Debtor free and clear of

all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have

not been expressly preserved under the Plan shall be deemed extinguished as of such date.

7.4.   **Post Confirmation Management of the Reorganized Debtor**. Equity in

the Reorganized Debtor will be issued to and held by a post-confirmation trust or alternatively, a

plan administrator.   Jeffrey Schwartz, Esq. of Wolf Haldenstein Adler & Herz LLP shall be

appointed as the trustee of the post confirmation trust or the plan administrator and shall receive

a $20,000 retainer upon the earlier of his court authorized retention as real estate counsel to the

Debtor or the Effective Date with all further fees to be paid from the Sale Proceeds.  The Plan

Administrator's fees shall be capped at $75,000.

7.5.    **Funding.**  Except as set forth elsewhere in the Plan, all payments required

to be made under the Plan shall be made by the Debtor, SDF and/or the Disbursing Agent in

accordance with the terms of the Plan.  Except as set forth elsewhere in the Plan, all distributions

to be made on the Effective Date shall be funded from (a) the Debtor's available cash as of the

Effective Date; (b) the Sale Proceeds; and (c) the funds to be contributed by SDF to satisfy

administrative and priority claims and to establish the Unsecured Creditors Fund.

7.6.    **Transfer Taxes.**  (a)  Pursuant to Section 1146 of the Bankruptcy Code,

the issuance, transfer, or exchange of any security and the making or delivery of any instrument

of transfer in connection with or in furtherance of the Plan shall be exempt and shall not be

subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording

tax or similar tax, and, to the extent provided by Section 1146 of the Bankruptcy Code, if any,

shall not be subject to any state, local or federal law imposing sales tax.  This exemption shall

apply to each individual unit sale that occurs after the Effective Date, including without

limitation, transfer taxes payable to New York City in accordance with the RPT, transfer taxes

payable to New York State in accordance with the TP-584, any mansion tax, and all mortgage

recording tax payable by purchasers of respective units.

(b)    Pursuant to Section 1142(b) of the Bankruptcy Code, the

Confirmation Order shall direct the appropriate recording office to record any recordable

document executed in connection with the consummation of the Plan, without the payment of

{00608854.DOC;5 }

Transfer Taxes.  The appropriate recording office in the State of New York or its municipalities and counties shall record any recordable document executed in connection therewith without the payment of any Transfer Taxes.

7.7.    **Execution of Documents.**  (a) On the Effective Date, the Debtor and any necessary party thereto, shall execute, release, and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)    Except as otherwise provided in the Plan, all assets transferred (i) by the Debtor or (ii) by any non-debtor third party in accordance with the terms of the Plan shall be, as of the Effective Date, deemed to be free and clear of all Liens, Claims and encumbrances and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date.

(c)    Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor and the Disbursing Agent shall be authorized to execute, in the name of any necessary party, any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including any Lien, claim or encumbrance that is to be released and satisfied upon Debtor's compliance with the provisions of Article 5 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

7.8.    **Filing of Documents.**  Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department,

{00608854.DOC;5 }

shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

7.9.    **Preservation of Rights of Action.**  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Reorganized Debtor or its designee, who may, in accordance with its determination of the best interest of the estate, enforce any claims, rights and causes of action arising under Sections 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

8.1.    **Disbursing Agent.**  The Disbursing Agent shall be Debtor's counsel who shall distribute all Cash or other property to be distributed under the Plan.  Subsequent to the Effective Date, the Plan Administrator shall act as the Disbursing Agent.  The Disbursing Agent may employ or contract with other entities to assist in or perform the distribution of the property to be distributed.  The Disbursing Agent shall be entitled to compensation for services rendered under the Plan at its usual and customary fee and reimbursement of all expenses incurred in the performance of its duties.  Pending the final distribution of all sums distributable under the terms

of the Plan (including the delivery to the Debtor of unclaimed distribution, pursuant to this

Article 8 of the Plan), the Disbursing Agent shall be deemed to be an officer of the Debtor with

full authority to sign checks on any bank account of the Debtor to the extent necessary to make

any payment or distribution contemplated by the Plan.

8.2.    **Timing of Distributions Under the Plan.**  Subject to Section 8.6 of the

Plan, any payments, distributions or other performance to be made pursuant to the Plan on

account of any Claim shall be deemed to be timely made if made on or within five Business Days

following the later of (i) the Effective Date or (ii) the expiration of any applicable objection

deadline with respect to such Claim or (iii) such other times provided in the Plan.

8.3.    **Method of Payment.**  Unless otherwise expressly agreed, in writing, all

Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic

bank.

8.4.    **Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court,

any party in interest may object to the allowance of any Claim filed with the Bankruptcy Court in

whole or in part by serving and filing an objection to such Claim no later than the Confirmation

Date; provided, however, that the Debtor or the Disbursing Agent may file and serve any

objection to any Claim at any time, but in no event after the later to occur of (i) 30 days after the

Effective Date or (ii) 30 days after the date Proof of such Claim or a request for payment of such

claim is filed.

8.5.    **Prosecution of Objections.**  After the Confirmation Date, only the Debtor

and the Disbursing Agent shall have authority to file, settle, compromise, withdraw or litigate to

judgment objections to Disputed Claims.  The Debtor and the Disbursing Agent shall have the right to litigate to judgment, settle or withdraw any objection to any Claim.

8.6.    **No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

8.7.    **Escrow of Cash Distributions.**  (a)  Unless otherwise agreed to in writing by the Debtor and the holder of any Claim (other than an Unsecured Claim or an Insider Claim) to which this Section 8.7 (a) applies, on the Effective Date the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property to be distributed under the Plan on account of Disputed Claims (other than an Unsecured Claim or an Insider Claim) that would be Allowed Claims but for the pendency of a dispute with respect thereto, including, but not limited to (i) such Disputed Claims entitled to treatment as Administrative Expenses or as Priority Claims pursuant to Sections 503 and 507 of the Bankruptcy Code, (ii) Claims of Governmental Units for any tax, (iii) any disputed cure amount and (iv) any amount due but not payable on the Effective Date on account of Administrative Expenses or Claims entitled to priority pursuant to Section 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

{00608854.DOC;5 }

26

(b)      In determining the amount of the Cash or property to be distributed under the Plan on account of Disputed Claims, the calculation of the distribution to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts.

(c)      The Disbursing Agent shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be so deposited.  Any Creditor whose Claim is so estimated or limited shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other Entity or property if the Allowed Claim of the Creditor (whose Claim was so estimated or limited) as determined by Final Order exceeds the amount so deposited.  Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order.

8.8.    **Distribution After Allowance.**  Within 30 days after the allowance of a Disputed Claim, in the event any distributions have been made as of the date such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute from the funds placed in escrow in accordance with Section 8.7 of this Plan all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

8.9.    **Investment of Segregated Cash and Property.**  To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account

{00608854.DOC;5 }

27

of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by Section 345 of the Bankruptcy Code; provided, however, that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

8.10.    **Distribution After Disallowance.**  Subject to Section 8.7(c) of the Plan, the Cash and other property segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall be returned to the Debtor.

8.11.    **Surrender of Instruments; Execution of Satisfactions and Releases.**

(a)    Notwithstanding any other provision of the Plan, no Creditor or Interest Holder that holds a note or other instrument evidencing such Creditor's Claim or Interest may receive any distribution with respect to such Claim or Interest unless and until the original note or other original instrument evidencing such Claim or Interest shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor of Interest Holder.

(b)    Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 8.13 of the Plan.

{00608854.DOC;5 }

(c)      In the event any Creditor of Interest Holder is unable to surrender a Note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such Entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent:  (i) proof of such Entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other Entities deemed appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a distribution under the Plan.

(d)      All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  Neither the Debtor nor the Disbursing Agent shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.

8.12.   **Delivery of Distributions.**  Except as provided in Sections 8.12 and 8.13 of the Plan, distributions to holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address.

{00608854.DOC;5 }

8.13.   **Undeliverable Distributions.**  (a)  If the distribution to the holder of any Claim is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of the Plan.

(b)     Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to Section 8.13 of the Plan, semi-annually, following the Effective Date, the Disbursing Agent shall make distributions of all Cash and property that has become deliverable during the preceding six-month period.  Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c)     Nothing contained in the Plan shall require the Debtor or the Disbursing Agent to attempt to locate any holder of an Allowed Claim.

8.14.   **Unclaimed Distributions.**  Any Cash or other property to be distributed under the Plan shall be retained by the Disbursing Agent if it is not claimed by the Entity entitled thereto before the later of (i) one year after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order and such entity's claim shall be deemed to be reduced to zero.

{00608854.DOC;5 }

8.15.  **Set-offs.**  The Disbursing Agent may, but shall not be required to set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, provided, however, that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Disbursing Agent has or may have against such holder.

## ARTICLE IX

## INJUNCTION AND RELEASES

9.1.  **Injunction**.  Except (i) as otherwise provided in the Plan or (ii) in any Final Order entered by the Bankruptcy Court, all persons who have held, hold, or may hold claims against, or interests in, the Debtor that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from the commencement or continuation of any action, the employment of process, from taking any act to collect, enforce, attach, recover or offset against such claim and taking any act to create, perfect or enforce any lien or encumbrance against property of the estate or property which is to be distributed to creditors under this Plan.

9.2.  **Limitation of Liability**.  Neither the Debtor, nor any of its respective members, officers, directors, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or

omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.    Nothing in this Section 8.2 shall limit the liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of Professional Conduct. Nothing in the Plan or the confirmation order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtor, or any of its respective members, shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties"), nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties referred to herein for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in this Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws or any

criminal laws of the United States or any state and local authority against the Released Parties referred to herein.

      9.3.   **Plan and Confirmation Order as Release**.  Except as otherwise provided in the Plan, from and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this Article 9 of the Plan.

# ARTICLE X

## MISCELLANEOUS PROVISIONS

      10.1.   **Orders in Aid of Consummation.**  Pursuant to Sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

      10.2.   **Compliance with Tax Requirements.**  In connection with the Plan, the Debtor and, where applicable the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to applicable withholding and reporting requirements; providing, however, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under Section 1146 of the Bankruptcy Code.

      10.3.   **Due Authorization by Creditors.**  Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of

{00608854.DOC;5 }

such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

10.4.  **Amendments.**  The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor at any time before the substantial consummation of the Plan, as provided in Sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

10.5.  **Revocation.**  The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or his Estate.

10.6.  **Request for Relief Under Section 1129(b).**  If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtor may request confirmation under Section 1129(b) of the Bankruptcy Code, subject to any modification of the Plan made pursuant to Section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019.

10.7.  **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

{00608854.DOC;5 }

34

10.8.   **Section Headings.**   The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

10.9.   **Computation of Time.**   In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.10.   **Successors and Assigns.**   The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

10.11.   **Notices.**   All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)      if to the Debtor at Emmons-Sheepshead Bay Development LLC, c/o _____, with a copy to Robinson Brog Leinwand Greene Genovese & Gluck, P.C., 875 Third Avenue, New York, New York 10022, Attn: A. Mitchell Greene, Esq.;

(b)      if to any Creditor at (i) the addresses set forth on the applicable Proofs of Claim filed by such holder; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim, or (iii) the address reflected in the Schedules if no Proof of Claim is filed and the Disbursing Agent has not received a written notice of a change of address; and

(c)      if to any Entity that has filed a notice of appearance, at the address set forth on such notice of appearance.

{00608854.DOC;5 }

10.12.   **Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

10.13.   **Other Actions.**  Nothing contained herein shall prevent the Debtor or creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

10.14.   **Severability.**  In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

10.15.   **Business Day.**  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

## ARTICLE XI

## RETENTION OF JURISDICTION

11.1.   **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

{00608854.DOC;5 }

(a)     Insure that the Plan is consummated, and to enter an Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party to take such action and execute such documents to effectuate the Plan;

(b)     Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims;

(c)     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(d)     Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

(e)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(f)     Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(g)     Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other

agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

(h)    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(i)    Modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code, and modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(j)    Cure any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(k)    Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

{00608854.DOC;5 }

(n)     Enter and implement such orders as are necessary or appropriate to implement or consummate the proposed sale of the Property.

(o)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(p)     Enter an Order or Final Decree concluding the Case.

11.2.   **Post-Closing Jurisdiction**.  Notwithstanding the entry of a final decree or an Order closing the case, the Bankruptcy Court shall retain jurisdiction to reopen the case for the purpose of enforcing, by injunction or otherwise, the term of the Plan, the Confirmation Order and any Final Decree, including, without limitation, the enforcement of any rights of the Debtor.

{00608854.DOC;5 }

39

## ARTICLE XII

## CLOSING THE CASE

12.1.  **Substantial Consummation**.  Until the occurrence of the Effective Date and Substantial Consummation of the Plan, the Debtor, its Property and its creditors shall be subject to further orders of the Bankruptcy Court.

12.2.  **Closing the Case**.  Upon the Substantial Consummation of the Plan, the Debtor shall expeditiously move for the entry of a Final Decree closing the Case and such other relief as may be just and appropriate.

**DATED:**        New York, New York
                  April 5, 2013


                              EMMONS SHEEPSHEAD BAY DEVELOPMENT LLC
                              By Yachad Enterprises, LLC, Managing Member

                              By: /s/ Jacob Pinson _____
                                     Jacob Pinson, Managing Member

                              **ROBINSON BROG LEINWAND GREENE
                              GENOVESE & GLUCK P.C.**
                              **Attorneys for the Debtor**
                              875 Third Avenue, 9th Fl.
                              New York, NY 10022
                              (212) 603-6300

                              By: /s/ A. Mitchell Greene _____
                              **A. Mitchell Greene (AMG-5900)**