**UNITED STATES BANKRUTPCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

IN RE:

**EMMONS-SHEEPSHEAD BAY DEVELOPMENT, LLC.**          **Chapter 11**

                            Debtor.          Case No. 12-46321 (ESS)

-------------------------------------------------------------------X

## <u>AFFIRMATION IN SUPPORT OF MOTION</u>

Albert Wilk D/B/A WIlk Re,Alex Dikman, Metropolitan Estates and Emmons Avenue

LLC, derivatively for the minority members (collectively, the "Movants") through their counsel

Karamvir Dahiya, Esq. of Dahiya Law Offices LLC respectfully submit the following:

Movants request vacating the Court Order dated July 3, 2013, confirming the Second

Amended Chapter 11 Plan of Reorganization of Emmons-Sheepshead Bay Development LLC,

(debtor). **Ex. A.**

Plan could not have been confirmed as the substantial underlying property of the

debtor's utilized as estate property for refinancing and restructuring of debts was and is not

property of the debtor, as the properties in question, commonly known as "The Breakers at

Sheepshead Bay Condominium," located at 3112 Emmons Avenue, Brooklyn, New York

described as Section 26, Block 8815, Lots 1001-1147 (fka Lot 86) (Emmons Properties) was

owned by Emmons Avenue LLC (Emmons) and same was fraudulent transferred to the debtor

without any consideration. **Ex. B.**

The Movants are the creditors of Emmons and thus creditors of the debtor as the debtor is

the transferee of the property which were fraudulently transferred to the debtor. The Movants

had filed a Complaint (State Complaint) bearing Index No. 20525/2011 with the Supreme Court,

Kings County against debtor and its officers, namely Jacob Pinson, aka Yakov Pinson, Norman

Pinson, a/k/a Nachman Pinson, Moti Pinson and Emmons challenging the transfer of sole assets of Emmons to the Debtor. **Ex. B.**

The Debtor and its officers moved to dismiss the State Complaint and discharge the lis pendens, however it was denied and in its decision the State Court stated, "[i]nsofar as the complaint also seeks derivate causes of action on behalf of Emmons for fraudulent conveyance and a constructive trust, the Notice of Pendency is proper." **Ex. C.** at page 21. Further, that the "Metropolitan's derivate cause of action sufficiently alleges the elements of a constructive trust . . . ." The State Court found the State Complaint sufficiently alleged facts, "indicating that the conveyance of the Emmons' assets to Emmons Sheepshead [debtor], by itself, rendered Emmons insolvent, and that the conveyance lacked consideration, the complaint sufficiently states a cause of action  for fraudulent conveyance under Debtor & Creditor Law § 273.   Further, the Court stated, "[t]he court finds that the complaint sufficiently alleges the following indicia of fraudulent intent by defendants: (1) a close relationship existed between the Emmons, Emmons Management and Jacob Pinson, and Jacob Pinson managed both Emmons Management and Emmons Sheepshead: (2) the property   was transferred   to Emmons Sheepshead for consideration; (3) Jacob Pinson knew of plaintiffs' claims because he signed the Agreement; and (4) defendants continue to control the property because they control Emmons Sheepshead. Thus plaintiffs state a sufficient cause of action for the imposition of the Notice of Pendency under DCL § 276. Plaintiff's cause of action for fraudulent conveyance affects the title to the property, and falls within the scope of CPLR 6501 . . . ." **Ex. C.**

The State court also stated that the debtors and its officer did not challenge the Movant's allegation: "derivative cause of action to recover Emmons' ownership of the property based upon

a theory of fraudulent conveyance, which also has not been challenged by defendants, . . . ." **Ex. C.**

In sum while dismissing the Order to Show Cause of the debtors and its officer, State court found the complaint sufficiently alleging all causes of action under DCL§ § 273, 274, 275, 276 and a constructive trust. **Ex. C.**

There is claim to constructive trust in favor of the Movants against the debtor regarding the property claimed by the property as its property. It is not property of the estate. 11 U.S.C. 541 (d). The debtor is under an equitable duty to convey it back to the Movants, for it is highly inequitable and unjust to let the debtor enrich itself at the cost of the rightful claimants. "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement (First) of Restitution § 160 (1937).

By virtue of the confirmation of the plan, the court is basically providing legitimacy to the act that runs afoul of New York States laws.

All the elements of the constructive trust as espoused by the Second Circuit in *Superintendent of Ins. for the State of New York v. Ochs (In re First Central Financial Corp)*, 377 F.3d 209, 212, are satisfied here. These are "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment. See **Ex. C.** State Court decision.

Imposition of the constructive trust is a well established in the circumstances of the relationship of the Movants with the Debtor. The Movants can clearly establish their claim as higher than the debtors and its officers.

## PROCEDURAL DUE PROCESS ISSUE

On August 30, 2012, the debtor, Emmons-Sheepshead Bay Development, LLC ("Emmons-Sheepshead"), commenced an action in this Court by filing a voluntary Chapter 11 petition. On February 28, 2013, the Movants filed a motion for examination pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and requested for production of documents of the Debtor, Emmons Ave LLC, Jacob Pinson, and T.D. Bank, N.A. A supplemental request for discovery was served on counsel for the debtor seeking certain contracts. The information sought has a direct bearing on the administration of the debtor's estate and this information was discovery was necessary for the Movants to have an informed objection to the Plan. The request for documents specifically requested operating agreements, mortgage documents, business ledgers, copies of all checks, financial statements, etc. (See Request for Production attached as **Exhibit D**). These documents were necessary to conduct an accounting and determine how debtor's final numbers for indebtedness were arrived. This request was crucial as Movants had reason to believe that the debtor did not arrive at a correct amount of indebtedness and any plan which the debtor would propose would not be made in good faith.

On April 26, 2013, the Court set out a scheduling order to conduct the 2004 examination on or before June 21, 2013. On June 26, 2013, Metropolitan, through its attorney, filed a Motion Compelling discovery. Within the Motion, Metropolitan requested that the debtor provide non-privileged information which directly responds to Metropolitan's inquiries concerning its claim in the case as well as the plan of reorganization by the debtor. Specifically, the motion focused on the answers of Interrogatory No. 7, 8, 9, 25, 27 and Request for Productions No. 13, 15, 24, 25, 28, and 38. (See attached Motion Compelling Discovery dated June 26, 2013 as **Exhibit E**). Also on June 26, 2013, Movants filed an objection to the confirmation of debtor's faith for lack

of good faith, as required by 11 U.S.C. § 1129(a)(3). **Ex. F.** The objection further informed the parties that discovery amongst the parties was incomplete and as such, Movants do not have adequate information to inform a vote on debtor's reorganization. In the objection, Movants asserted that the Debtor has not been candid with disclosure of its assets, liabilities, functionality, and dealings. Specifically, Movant has proof that the Debtor entered into contracts for sale of certain apartment units where the contract price was not the price that was actually paid out. That is, the Debtor was paid monies which were "under the table."

On June 27, 2013, a hearing was held before this Court to confirm debtor's second plan. During the hearing, Jerold Fuerestein, Esq. , put pressure on the Court that the plan <u>must</u> be confirmed by 5pm or the investors will back down from providing any additional funds necessary to make improvements on the property. In support of this "urgency," the Court was told that there is some water damage and flooding on the property and immediate action is necessary. An inspection of the property located at 3144 Emmons Ave, however shows that on that day there was no water damage. (Please see report of Inspector Mayer Salomon attached as **Exhibit G**). Mr. Fuestein misspoke. Further, during the hearing, Movant's attorney Ms. Kachan requested the Court to provide her clients with additional time as they were not prepared to make a decision on the confirmation of the plan. Specifically, there was serious concern as to whether the debtor proposed the plan in good faith. The creditors provided, as evidence to this Court, testimony of Mr. Dikman along with copies of checks showing discrepancies in the amounts charged for the sale of the units. The checks and Mr. Dikman's testimony were presented to show that the amounts alleged in debtor's plan were different than actual amounts received. Movants' objection to the plan alleged that it had reason to believe that the debtors plan was not proposed in good faith and that the amount of indebtedness owed to the bank is incorrect. A

5

proper accounting needed to be conducted in order to determine what the actual number is. In order to conduct a proper accounting, the creditors requested multiple documents through their various discovery requests which were ignored. Information was concealed and debtor's officer proactively disregarding the information sought. Movants could not get information and thus were prevented from putting best of arguments and thus their property rights were eviscerated owing to denial of due process.    On July 3rd, 2013, this Court entered an Order confirming debtors plan without attending to the valid concerns of Ms. Kachan, as her concern were mistakenly sidelined as not concerned with the plan.

## ARGUMENTS.

Bankruptcy law cannot be seen to be displacing the state law or dismissal of the rights of the people, for such a construct is denial of due process. It is the property and other rights of the Movants that have been eviscerated  and unfortunately not because of the unfavorable result, but because of the denial of due process and not hearing their voice.  Just because it is a bankruptcy process, it does not mean that voice of dissent shall be suppressed or not given a benefit of due process.  Majority in dollar value might have said yes to the plan confirmation, however, if it is premised on a suppression of a right of a party to a claim than it is definitely denial of due process.  Mechanically pushing the different provisions of the bankruptcy code to meet self-created exigencies of a majority and holding a hearing in exclusion to the other rights of the minority interest holder cannot alone be enough to sustain a challenge under a due process claim. Thus, as put by Supreme Court:

> It is not every act, legislative in form that is law. Law is something more than mere will exerted as an act of power. It must be not a special rule for a particular person or a particular case, but  . . . 'the general law . . .' so "that every citizen shall  hold his life, liberty, property and immunities under the protection of the general rules which govern society," and thus excluding, as not due process of law, acts of attainder, bills of pains and penalties, acts of confiscation, acts

reversing judgments, and acts directly transferring one man's estate to another, legislative judgments and decrees, and other similar special, partial and arbitrary exertions of power under the forms of legislation. Arbitrary power, enforcing its edicts to the injury of the persons and property of its subjects, is not law, whether manifested as the decree of a personal monarch or of an impersonal multitude.

*Hurtado v. California*, 110 U.S. 516, 535-36 (1884).

This "procedural due process" imposes the constitutional limits on judicial or executive enforcement of legislative decisions. Confirming the plan following the statutory guideline is not enough in itself to show that it comported well with the constitutional requirement of due process. It is constitutional rather than non-constitutional (bankruptcy code process) criteria alone that must be employed, for due process right is "conferred, not by legislative grace, but by constitutional guarantee." *Arnett . Kennedy*, 416 U.S. 134 (1974). Further, "[w]hile the State may define what is and what is not property of the estate, once having defined those rights the Constitution defines due process." *Id* at 185. "The very nature of due process negates any concept of inflexible procedures applicable to every imaginable situation." *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961).

Lack of providing paperwork, as requested by the counsel of the Movants, Ms. Alla Kachan, denied them the opportunity to participate in the process by which the impugned decisions confirming the plan was made. The fundamental procedural due process right to a hearing embraces the right to present evidence. See, e.g., *Morgan v. United States*, 304 U.S. 1, 18 (1938). The Movants did not have a meaningful access to information to object to the plan, thus the plan confirmation was not fairly achieved. "[V]alidity and moral authority of a conclusion largely depend on the mode by which it was reached . . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against and opportunity to meet it. Nor has a better way been found for generating the

feeling, so important to a popular government, that justice has been done." *Joint Anti-Fascist Refugee Committee v. McGarth*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring). It is not enough that notice was given to the Movant here in this case or that they were allowed to object to the plan, but it is the process, how fundamental disclosures were missing and not provided, that undermined its strength. The process is the very essence of justice. See, e.g. *Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) (emphasizing not only the appearance by the reality of fairness).

Lack of meaningful participation, owing to the debtor's principal deliberately avoiding disclosure resulted in substantial unfairness and deprivation of right to challenge or hold the debtor and its principal accountable under the laws of New York State and United States. See *Fuentes v. Shevin*, 407 U.S. 67, 97 (1972). Steamrolling a Chapter 11 plan for confirmation, despite knowledge that the plan is premised on properties that have been clearly fraudulently conveyed without any consideration from Emmons LLC to the debtor, is indeed unfair or at least a mistaken deprivation of the entitlements conferred by law upon the Movants. See, e.g. *Boddie v. Connecticut*, 401 U.S. 371, 374, (1971): "Perhaps no characteristic of an organized and cohesive society is more fundamental than its erection and enforcement of a system of rules defining the various rights and duties of its members, enabling them to govern their affairs and definitely settle their difference in an orderly, predicable manner." The Movants should have been talked to rather than simply being dealt with, that is the rudimentary requirement of due process.

The value of process is a nullity if there was no meaningful and satisfying participation in the decision that which deprived the Movants of their rights. See *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, (1980) (*citing Carey v. Piphus*, 435 U.S. 247, 259-262, 266-67 (1978)(holding

8

that there are two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decision making process).

Confirmation or objection to the confirmation is a contested matter. Rule 3020(b)(1), 9014 of Fed. R. Bankr. P. Further, "[t]estimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding." 9014 (d). Very material factual question was about the nature of the property of the estate, the debt on the properties and siphoning of corporate assets by its principal. Ms. Kachan had requested several times and repeatedly entreated this court, that she has been deprived of or not provided material disclosures. Movants requested the Court to have time to show to the Court additional information. Court did not notify the parties that the "hearing will be an evidentiary hearing at which witness may testify." Rule 9014(e) (The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify). Of what avail is this procedure, if the prelude to such hearing, discovery sought, was not properly responded to? Contested hearings entails discovery rights.

It is true that the court had scheduled hearing date and the parties of were notified about such hearing. However, it was not notified that the court shall conduct an evidentiary hearing as per Rule 9014(e). The Movants did not have enough time to prepare for the evidentiary hearing held on an ad hoc basis. At the core of the procedural due process right is the guarantee of an opportunity to be heard and its instrumental corollary, a promise of prior notice. Notice must include not only information that a hearing is about to occur but information as to what the hearing will entail—including both "the nature of the charges [and] also . . . the substance of the

relevant supporting evidence." *Brock v. Roadway Express* 107 S.Ct. 1740, 1743 (1987). Nothing less permits the person threatened with deprivation to prepare sufficiently to avoid undue risk of an erroneous outcome.   Going ahead with the hearing without the Movants being provided discovery sought does not comport with due process. Thus it is clear that the constitutionality of a particular notice mechanism is not to be judged by its actual success—whether an individual or group is in fact notified—but turns instead on whether the chosen method is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Discovery demanded by Ms. Kachan, should be have been coerced or debtor's plan not confirmed.   The procedures needed to minimize error and to reduce the dangers of arbitrary action to an acceptable level vary "according to specific factual contexts," *Hannahh v. Larche*, 363 Us. 420, 442 (1960), since "not all situation calling for procedural safeguards call for the same kind of procedure," *Morrissey v. Brewer*, 408 U.s. 471, 481 (1972).   It is understandable, the plan has to be confirmed and process move expeditiously, however it cannot be at the cost of the required procedural due process, as "procedural due process is not intended to promote efficiency." *Fuentes v. Shevin*, 407 U.S. 67, 90 n. 22 (1972).   It is clear that adequate protection of such "core concerns, like withering of challenges to aspect of the estate property, property being taken away from the reach of the creditors and essentially foreclosing challenges to such transfer, cannot be afforded by "balancing" the general interests of the majority, confirming the plan, against those of Movants.

It is true that the reorganization are favored and the bankruptcy law was enacted to accomplish financial objectives of sustained growth in the market, providing protection to the

businesses giving them chance and time to regain and thus promote a public gain. The *Learned Counsel*, Mr. Fuerstein threat that the investors shall withdraw funding for the debtor incase the plan is not confirmed by 5 P.M. cannot alone move the vehicles of justice. It is a travesty of justice to adjudicate a plan confirmation under such pressure.    Court must decline such, "invitation to engage in a utilitarian comparison of public benefit and private loss." *United States Trust Co. of New York v. New Jersey*, 431 U.S. 1 (1977) (striking down state impairment of bond holders contract claims despite resulting gain to goals of better mass transit, energy conservation, and environmental protection).

## CONSTRUCTIVE TRUST

The property being used by the debtor to fund, is not even property of the estate, pursuant to the allegation of the Movants in the State Court Complaint. There is a pending serious consideration by the State Court on that issue. Bankruptcy Court cannot oust such consideration, for property rights are to be decided pursuant to the State laws. *Butner v. United States*, 440 U.S. 48 (1979). If the bankruptcy court, was of the opinion that the State Court decision had not reached a conclusion to accord *res-judicata* or *Rookerfeldman* status to a dispute, then it was but necessary for this Court to have decided the issue of the nature of the estate property.

### Constructive Trust Standard

Movants request this Court to reconsider its decision to confirm debtor's chapter 11 plan as the property included in the debtor's chapter 11 plan which is being considered part of debtor's estate is actually property being held in constructive trust and not part of debtor's estate. The issue of whether the transfer of such property creates a constructive trust is still pending for the state court to decide.   Today, Movant raises these issues not to ask this Court to make a finding on such issue, but to request this Court to reconsider confirmation of the plan.   There is a

serious question as to whether this property is even the property of debtor's estate.  The entire

plan is subjected towards the disposition of a property that may not even belong to the debtor and

will seriously prejudice the rights of its true, bona fide owners, forever.

Pursuant to 11 U.S.C. § 541(d), "property in which the debtor holds, as of the

commencement of the case, only legal title and not an equitable interest . . . becomes property of

the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title

to such property, but not to the extent any equitable interest in such property that the debtor does

not hold."  For example, any property deemed to be property held in constructive trust is

property that is not property of the estate.  *See, Chemical Bank v. Coan*, 2 Fed.Appx. 180 (2d

Cir. 2001)("Once a constructive trust is imposed, the property held in trust is not considered

'property' of the bankruptcy estate.")(*citing In re Koreag Controle et Revision S.A.*, 961 F.2d

341, 352 (2d Cir. 1992*); In re Flanagan*, 503 F.3d 171, 180 (2d Cir. 2007)("The effect of a

constructive trust in bankruptcy is profound. While bankrupt estate is defined very broadly under

§541(a)(1) of the Bankruptcy Code to include all legal or equitable interests of the debtor, any

property that the debtor holds in constructive trust for another is excluded from the estate

pursuant to §541(d). . . ."); *In re Howard's Appliance Corp.,* 874 F.2d 88. 93 (2d Cir. 1989); *see*

*also, Beiger v. Internal Rev. Serv.,* 494 U.S. 53, 59 (1990).

If there is in fact a constructive trust, then the constructive trust claimant will obtain a

remedy superior to all other claimants in the case since the property is not part of the bankruptcy

estate.  See, *Chemical Bank,* 2 Fed.Appx. at 184 (finding a bank's claim superior to that of the

appointed trustee once it was determined property was fraudulently transferred to bankruptcy

debtor and it was being held in a constructive trust).  In determining whether to impose a

constructive trust on property within the debtor's possession, the Court should look to state law.

*In re Howard's*, 874 F.2d 88, 93 (2d Cir. 1989); *see also, In re First Cent. Fin. Corp.*, 377 f.3d 209, 212 (2d Cir. 2004). Generally, New York law requires four elements for a constructive trust: (i) a confidential or fiduciary relationship; (ii) a promise, express or implied; (iii) a transfer of the subject *res* made in reliance on that promise; and (iv) unjust enrichment. *Id.* Nonetheless, "[a]lthough these factors provide important guideposts, the constructive trust doctrine is equitable in nature and should not be 'rigidly limited.'" *Koreag*, 961F.2d 341, 348 (2d Cir. 1992)("New York courts have consistently stressed the need to apply the doctrine with sufficient flexibility to prevent unjust enrichment in a wide range of circumstances . . . the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity.")

Here, in this case, the creditors, Movants brought a derivative constructive trust claim on behalf of Emmons Avenue LLC in state court. The property, which the debtor claiming to be its own, located at 3112 Emmons Ave, Brooklyn, New York was fraudulently transferred to the debtor, without consideration, consent or knowledge of the creditors. This property is not the property of the estate and it is only being held under a constructive trust. In the state court's decision granting in part and denying in part debtor's motion for summary judgment, the state court found that "Metropolitan's derivative cause of action sufficiently alleges the elements of a constructive trust and supports the Notice of Pendency." (See **Exhibit C.** page 25).

First, Emmons and Emmons Management had a fiduciary duty of undivided loyalty toward Emmons and Emmons' assets. Emmons Management breached that duty and violated the Liability Company Law by increasing the amount of acquisition and construction loans Emmons owed its lenders, and by increasing the percentage of proceeds from sales units at the property that must be paid to the lenders. Emmons Management's transfer of the property

without any consideration is also a breach of Emmons Management's fiduciary duties owed towards Emmons.    Emmons was caused to be unable to meet its obligations to creditors. Emmons was harmed as a result of the breach in the following ways: (1) the ownership interests of Emmons' members became less valuable because the mortgage debt increased by more than $7[1] million; (2) Emmons' repayment of Metropolitan's initial investment and payment of Metropolitan's share of the profits was postponed, and jeopardized because Emmons would now pay over $7 million more to the mortgage bank; (4) the probability that Emmons would be unable to pay Metropolitan either its initial investment or its share of the profits became greater, since the proceeds of sale of a greater number of limited units would now be devoted toward paying the mortgagee rather than Metropolitan; (4) the risk of Emmons becoming insolvent became greater, and Emmons ultimately did become insolvent, since at least two foreclosure proceedings have been instituted against Emmons; and (5) Metropolitan's and other members' ownership interests in Emmons and in the premises were jeopardized.

Court was misled.  On the day of the hearing, the Court was pressured to confirm the plan before 5pm.  The Court was informed that if there is no confirmation by 5pm, the estate's investors might change their mind and walk away.  To justify the pressure on this Court, Jerold Feuerstein, the attorney for SDF17 Emmons LLC, stated that there was water damage or flood which was going to become costly unless a plan was confirmed and the investors were able to cure the issue. Interestingly enough, an inspection conducted by Inspector Mayer Salomon from Local Home Inspection LLC, stated that no water damage was found.  On the day of the inspection, Mr. Salomon inspected four ground floor condo units which were adjacent to the parking lot.  These units were suspected to have water damage.  Upon inspection of these units, the inspector found

---

[1] The loan borrowed from the bank was increased from $23,600,000 when Metropolitan first entered into an agreement with Emmons to $30,810,000.

"all units that were suspected to have water damage were thoroughly inspected and were found to be completely dry with no signs of previous water damage. Other units were not inspected because they are occupied." (See Inspection Report of Inspector Mayer Salomon attached as **Exhibit G**).

As the plan was confirmed without resolving outstanding issues regarding the nature of the property and without full disclosures, it does not comply with the mandate of Bankruptcy Code. The property being used here is not property of the estate as it was brought in violation of New York Debtor and Creditors Laws. Thus this plan does not conform with applicable provision of Title II. § 1129(a)(1). The proponent of the plan was under obligation to provide discovery as demanded, however it was not done thus the proponent of the plan did not comply with the provision of Title II. § 1129(a)(2). This case was not a good faith filing and plan proposing to dispose of property in violation of the superior interest of the Movants is not proposed in good faith.

The Movants request that the order confirming the plan be vacated and issue about the nature of the property be resolved first. The Movants also request that in case the Court does not wish to consider the arguments than it stay its Order pending the Appeal of its decision confirming the plan.

Dated: New York New York
July 17, 2013

Karamvir Dahiya, Esq. for Movants

15