ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Avenue
New York, New York 10022
Telephone: (212) 603-6300
Facsimile: (212) 956-2164

Hearing Date: August 15, 2013 at 9:00 a.m.

*Attorneys for the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------- X
In re:                                                :   Chapter 11
                                                      :
                                                      :   Case No.: 12-46321 (ESS)
EMMONS SHEEPSHEAD BAY                                 :
DEVELOPMENT LLC,                                      :
                       Debtor.                        :
                                                      :
----------------------------------------------------- X

**APPLICATION OF ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C. AS AND FOR ITS FIRST AND FINAL AWARD OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED AS COUNSEL FOR THE DEBTOR FROM JULY 11, 2012 THROUGH JUNE 30, 2013**

TO THE HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE:

**Robinson Brog Leinwand Greene Genovese & Gluck P.C.,** ("RBLGGG"), attorneys for Emmons-Sheepshead Bay Development, LLC, as debtor and debtor in possession in the above-captioned case (the "Debtor"), for its first and final application (the "Application"), pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for allowance of compensation for professional services performed by RBLGGG for the period commencing July 11, 2012 through and including June 30, 2013 (the "Compensation Period"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period, respectfully represents:

{00634795.DOC;1 }                    1

# SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

1. This Application has been prepared in accordance with the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines") and the Order authorizing the retention of RBLGGG as counsel to the Debtor in this case. Pursuant to the UST Guidelines, a certification regarding compliance with the same is annexed hereto as Exhibit A.

2. RBLGGG seeks allowance of compensation for professional services rendered to the Debtor during the Compensation Period in the aggregate amount of $292,552.00 and reimbursement of disbursements in the amount of $3,191.34. During the Compensation Period, RBLGGG attorneys and paraprofessionals expended a total of 628.70 hours for which compensation is sought.

3. During the Compensation Period RBLGGG has received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application. There is no agreement or understanding between RBLGGG and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in this case.

4. The fees charged by RBLGGG in this case are billed in accordance with its existing billing rates and procedures in effect during the Compensation Period. The rates RBLGGG charges for the services rendered by its professionals and paraprofessionals in this chapter 11 case are the same rates RBLGGG charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive legal market.

5. Pursuant to the UST Guidelines, annexed hereto as Exhibit B is a schedule setting forth all RBLGGG professionals and paraprofessionals who have performed services in this chapter 11 case during the Compensation Period, the capacities in which each such individual is employed by RBLGGG, the hourly billing rate charged by RBLGGG for services performed by such individual, the year in which each professional was first licensed to practice law and the aggregate number of hours expended in this matter and fees billed therefor.

6. Annexed hereto as Exhibit C is a schedule specifying the categories of expenses for which RBLGGG is seeking reimbursement and the total amount for each such expense category.

7. Pursuant to Section II.D of the UST Guidelines, annexed hereto as Exhibit D is a summary of RBLGGG's time records billed during the Compensation Period, including the utilization of project categories as hereinafter described.

8. RBLGGG maintains computerized records of the time spent by all RBLGGG attorneys and paraprofessionals in connection with the prosecution of the Debtor's chapter 11 case. Subject to redaction or modification for the attorney-client privilege where necessary to protect the Debtor's estate, copies of these computerized records have been furnished to the Court and the Office of the United States Trustee for the Eastern District of New York (the "U.S. Trustee") in the format specified by the UST Guidelines and are attached hereto as Exhibit D.

9. Prior to the commencement of this chapter 11 case and as set forth in the Affidavit of A. Mitchell Greene in connection with the Debtor's Application for Authorization to Employ and Retain RBLGGG as Attorneys for the Debtor, RBLGGG disclosed that the RBLGGG received a payment of $26,046 from an affiliate of the Debtor, which amount included the $1,046 filing fee. Robinson Brog performed current services on the Debtor's behalf and billed the Debtor for such services in the amount of $17,587.50 and as at the Petition Date held a

pre-petition retainer in the amount of $7,412.50 which amount was to be utilized in connection with fees and expenses incurred in this case.

## BACKGROUND

10.     On August 30, 2012, (the "Commencement Date"), the Debtor commenced with this Court a voluntary case under the Bankruptcy Code and filed its petition along with its schedules of assets and liabilities and lists of creditors and executory contracts required pursuant to §521 of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtor thereafter continued in the control of its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On November 13, 2012, the Debtor filed an amendment to its schedules to add additional creditors and to modify the scheduled amounts due certain creditors.

11.     On September 14, 2012, the Debtor filed an Application to Employ Robinson Brog Leinwand Greene Genovese & Gluck P.C. as Attorneys for the Debtor. [Docket No. 9]. An affirmation in support of the retention application was filed on October 15, 2012 [Docket no. 11]. No objections were filed to RBLGGG's retention and pursuant to an order of this Court dated December 4, 2012, the Debtor was authorized to retain RBLGGG as its attorneys to render legal services in the prosecution of its chapter 11 case. [Docket No. 24].

12.     No trustee, examiner or creditor's committee has been appointed in the Debtor's chapter 11 case.

13.     The Debtor is the owner of the real property located at 3112-3144 Emmons Avenue, Brooklyn, New York (the "Property") and the sponsor of the condominium development at the Property known as The Breakers at Sheepshead Bay Condominium. The condominium

offering plan was accepted by the New York State Attorney General's Office on February 8, 2006. As of the Commencement Date, the Debtor owned approximately 49 unsold residential units, 43 parking spaces and a marina at the Property.

14. The Property was originally owned by Emmons Avenue LLC, an affiliate of the Debtor. Emmons Avenue LLC and the Debtor were parties to a lease dated December 29, 2004, which provided the Debtor with an option to purchase the Property. Pursuant to ACRIS records, the lease and memorandum of lease were terminated and the Property conveyed to the Debtor in 2008. Both Emmons Avenue LLC and the Debtor were obligated on the various loans extended by TD Bank, N.A. ("TD") in connection with the acquisition, construction and development of the Property and the condominium project.

15. TD was the Debtor's secured lender as of the Commencement Date and the plaintiff in a series of litigations against, amongst other defendants, Emmons Avenue LLC and the Debtor in connection with the various loans that were extended for the acquisition and construction of the Property. On or about October 16, 2012, TD assigned its various mortgages and related loan documents to SDF17 Emmons LLC ("SDF").

16. The Property is located in Sheepshead Bay, Brooklyn, New York and suffered extensive damage as a result of Hurricane Sandy. During the bankruptcy period, Debtor, in conjunction with SDF, worked to repair the damage to the Property consisting of repairs to both the individual residential units and the condominium common areas in order to restore the Property to pre-Hurricane Sandy condition and be in a position to commence marketing and sales of the remaining unsold units.

## SUMMARY OF SERVICES

1. Subsequent to the initial consultation with the Debtor, RBLGGG met with the Debtor's principals to review the status of the foreclosure proceedings and related litigation and began gathering and reviewing the documentation and information necessary to prepare the petition

{00634795.DOC;1 } 5

and schedules. This included reviewing ACRIS records, loan documents, tax returns, management agreements, operating agreements and the condominium offering plan and various amendments to the offering plan. Upon the filing, RBLGGG also immediately reached out to counsel to TD so that they were aware of the bankruptcy case filing and the imposition of the automatic stay.

2.  The period subsequent to the Commencement Date coincided with the Jewish holidays, requiring the rescheduling of the creditor meeting in the Debtor's case. The Office of the United States Trustee accommodated the request and RBLGGG communicated with both the Debtor and the Office of the United States Trustee with respect to the rescheduling of and appearance at an Initial Debtor Interview and 341(a) meeting of creditors. RBLGGG also rendered professional services to deal with various issues typically faced by a debtor at the outset of a chapter 11 case including working with the Debtor to review the US Trustee guidelines, the preparation of monthly operating reports, the opening of DIP bank accounts, and communicating with the Debtor's insurance broker so as to ensure that appropriate insurance coverage remained in place.

3.  An initial case conference was scheduled by the Court and RBLGGG appeared on the Debtor's behalf. Also in attendance was counsel to TD and counsel for Metropolitan Estates, Inc., Albert Wilk d/b/a Wilk Real Estate and Alex Dikman (the "Metropolitan Group"), purported creditors of the Debtor who took an active role in the Debtor's chapter 11 case. After the initial case conference, RBLGGG requested that counsel to the Metropolitan Group provide it with documentation to evidence their claim in an effort to resolve this dispute without the need for costly and time consuming litigation.

4.  After the Commencement Date RBLGGG received a number of communications and inquiries from entities interested in the Debtor's property or in TD's claim. RBLGGG responded to the various inquiries and counseled the Debtor with respect to the various reorganization and/or exit scenarios available in the event of a sale of the Property or TD's claim

to a new lender. Approximately 45 days after the Commencement Date, on or about October 16, 2012, TD sold and assigned its various mortgages and related loan documents to SDF. Shortly thereafter, Hurricane Sandy struck, causing substantial damage to the Property. RBLGGG worked with counsel to SDF to make sure that the Property was secure and acted as a liaison between SDF and the Debtor with respect to issues related to repair work, insurance and access to the Property. In order to protect and preserve the Property, SDF commenced immediate emergency repair work to stabilize the Property. As the Debtor had no available source of income to finance the necessary repair work, RBLGGG negotiated on the Debtor's behalf for post petition financing from SDF and prepared the appropriate motion for the Court's consideration. Objections to the financing motion were made by several parties, including the Metropolitan Group.

5. After extensive negotiations with the objecting parties, and specifically, the Metropolitan Group, whose continued objections to the financing request required the parties to participate in a conference call with the Court, RBLGGG with the support of SDF, by its counsel, was successful in resolving the objections to the financing request and an interim consent order authorizing the financing was entered on January 14, 2013. A final financing order was entered on April 17, 2013.

6. RBLGGG was simultaneously negotiating with SDF the terms of a consensual plan of reorganization and in advance of preparing a plan and disclosure statement, submitted a bar date application so that the Debtor would be able to proceed with the drafting of a plan as expeditiously as practicable.

7. The damage caused by Hurricane Sandy required the Debtor and its secured creditor, SDF, to focus first on the immediate health and safety issues presented by the damage, including securing the Property for its residents and for the condominium association. Debtor thereafter was able to focus on the economic issues related to the storm and the damage caused by the storm which required RBLGGG to review of the insurance coverage in place on the

Property, analyze the construction costs to repair, restore and rehabilitate the Property and determine how and if the Property and its value could be preserved and a confirmable plan presented to the Debtor's creditors and the Court.

8. After the bar date order was entered, RBLGGG analyzed claims as they were filed and reviewed them with the Debtor's principal. RBLGGG also sought backup to the various claims filed by the Metropolitan Group. Despite several requests, the Metropolitan Group failed to provide backup to their claims which the Debtor believed to be equity claims. As the case needed to move forward, RBLGGG prepared a claims analysis and a liquidation analysis, reviewed them with the Debtor and began the drafting of a plan and disclosure statement.

9. On February 1, 2013 RBLGGG filed the Debtor's plan and disclosure statement and a scheduling motion for a hearing on the disclosure statement.

10. Shortly thereafter, the Metropolitan Group engaged new counsel who contacted RBLGGG and requested an extension of time to object to the disclosure statement and advised that the claims backup would be forthcoming. On February 22, 2013, Metropolitan Group's new counsel emailed the purported claims backup to RBLGGG. RBLGGG reviewed the backup and determined that the claims were not properly substantiated and prepared objections to each of the claims filed by the Metropolitan Group.

11. New counsel to the Metropolitan Group interposed an objection to the disclosure statement and also sought a 2004 examination of various parties in the bankruptcy proceeding. RBLGGG opposed the 2004 motion and attempted to negotiate a consensual discovery schedule with counsel to the Metropolitan Group so that the case could continue on both the litigation and confirmation track simultaneously. After extensive negotiations with counsel to the Metropolitan Group, including a conference call with the Court with respect to discovery deadlines, RBLGGG and Metropolitan by its new counsel entered into a stipulation establishing

various discovery deadlines which stipulation was "so ordered" by the Court on April 26, 2013.

12. RBLGGG also filed an amended plan and disclosure statement on March 4, 2013 which was objected to by the Metropolitan Group, and a second amended plan and disclosure statement on April 5, 2013.

13. At a hearing held on April 11, 2013, RBLGGG successfully expunged two (2) of the five (5) claims filed by the Metropolitan Group. At that same hearing, RBLGGG obtained approval of the Debtor's second amended disclosure statement which was approved by order entered on April 17, 2013.

14. RBLGGG then began the discovery process which included preparing discovery demands for service upon the Metropolitan Group in accordance with the agreed upon deadlines and responding to the demands served by Metropolitan Group upon the Debtor. RBLGGG met with the Debtor's representative to review the demands, to review responses to the discovery demands and to review the backup provided by the Debtor for turnover with the responses to the discovery demands.

15. The delays in the case associated with the Metropolitan Group's various objections to the confirmation process and the discovery process in conjunction with the increased costs being covered by SDF as the court approved DIP lender resulted in SDF moving to modify the automatic stay so that it could proceed with its foreclosure of the Property in the state court. RBLGGG and SDF's counsel negotiated a resolution of the stay motion by agreeing to an outside deadline for confirmation in an effort to keep the case on track. RBLGGG also sought approval for the Debtor's retention of special real estate counsel to act on the Debtor's behalf with respect to its condominium offering plan. It was also requested that real estate counsel be authorized and designated to act as the Debtor's representative post – confirmation. Real estate counsel was thereafter retained with the Court's approval.

16. At a hearing held on May 28, 2013, RBLGGG presented a request that all parties participate in a settlement conference with the Court in an attempt to resolve the various Metropolitan Group claims and be in a position to confirm a consensual plan of reorganization or liquidation. A settlement conference with the Court was held on June 10, 2013 and was followed up with a teleconference with the Court on June 18, 2013. Extensive settlement negotiations including numerous emails, phone calls and letters between the parties continued with RBLGGG and counsel to the Metropolitan Group during this period of time up to the scheduled confirmation hearing, but the negotiations were unsuccessful and the parties could not reach consensus on the Debtor's plan.

17. After the approval of the disclosure statement and the request for the settlement conference, RBLGGG moved forward with the plan solicitation process and served the solicitation materials required by the order approving the disclosure statement upon all of the Debtor's creditors and other parties in interest and proof of service was filed with the Court. Ballots were tabulated and a ballot certification prepared setting forth that the plan had been accepted by both impaired voting classes of creditors. Once the ballot certification was completed and filed RBLGGG worked with the Debtor to prepare for the confirmation hearing. On June 27, 2013, a hearing was held on confirmation of the Debtor's second amended plan of reorganization. The hearing was contested by the Metropolitan Group. Just prior to the hearing, SDF advised that it was prepared to withdraw its support of the plan and the financing of the plan in the event the plan was not confirmed on that date. After a lengthy evidentiary hearing the Court confirmed the second amended plan of reorganization and on July 3, 2013 signed an order confirming the second amended plan. The confirmation order was entered on July 8, 2013 and RBLGGG served notice of entry of

the confirmation order on all parties on that same date.[1]

18. While at times contentious, the end result in the Debtor's case is a confirmed plan within one year of the Commencement Date, a result that RBLGGG submits warrants approval of this Fee Application.

19. All of the services for which RBLGGG seeks compensation herein have been rendered on behalf of the Debtor and were necessary and appropriate to the administration of the Debtor's chapter 11 case. Applicant's services were required on a regular basis in representing the Debtor. The above synopsis of RBLGGG's representation of the Debtor delineates the general areas of services performed for and on behalf of the Debtor during the Compensation Period. Parties in interest are referred to counsel's detailed billing records for the precise entries relating to the work performed during the Compensation Period. The time records account for the time expended by RBLGGG in consecutive order by date within eleven (11) specific project billing subsections: (1) Asset Disposition; (2) Business Operations; (3) Case Administration; (4) Claims Administration and Objections; (5) Fee/Employment Applications; (6) Financing; (7) Litigation; (8) Meetings of Creditors/Status Hearings; (9) Plan and Disclosure Statement; (10) Relief From Stay Proceedings and (11) Case Preparation. The time records were kept contemporaneously in the ordinary course of RBLGGG's business and reflect that during the Compensation Period 628.70 hours of time was expended by RBLGGG in performing services for the Debtor[2]. The time records detail the amount of time expended by each individual, the nature of services performed and the date of such services.

20. The professional services performed by RBLGGG on behalf of the Debtor

---

[1] The Metropolitan Group appears to have engaged new counsel who has filed a motion to reconsider or vacate the confirmation order. Debtor and RBLGGG do not believe the motion has merit and will submit an objection to the motion which is returnable on the same date as this Fee Application.

[2] RBLGGG is not seeking compensation for 6 hours of time billed by Lori Schwartz in connection with certain administrative tasks performed on the Debtor's behalf. RBLGGG is also not seeking compensation for .1 hours of time charged by Robert M. Sasloff for certain administrative tasks. RBLGGG is not requesting any compensation for the time charged in preparing this Fee Application.

{00634795.DOC;1}     11

during the Compensation Period required an aggregate expenditure of 628.70 recorded hours by RBLGGG's members, counsel, associates, and paraprofessionals.

21. During the Compensation Period, RBLGGG billed the Debtor for time expended by attorney's based on hourly rates ranging from $275 to $600 per hour. Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $465.33 for services rendered by attorneys at RBLGGG which rates compare more than favorably with firms with similar experience in bankruptcy matters. As noted above, annexed hereto is a schedule listing each RBLGGG professional who performed services in this case during the Compensation Period, the hourly rate charged by RBLGGG for services performed by each such individual, and the aggregate number of hours and charges by each such individual.

## ACTUAL AND NECESSARY DISBURSEMENTS OF RBLGGG

22. As set forth in Exhibit C hereto, RBLGGG has disbursed $3,191.34 as actual and necessary expenses incurred in providing professional services during the Compensation Period.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

23. Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id.* § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;

(B)  the rates charged for such services;

(C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title;

*Id.* at § 330(a)(3).

24. In determining the reasonableness of a compensation request, courts generally apply the lodestar method. Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334, 337 (6th Cir. 1991) ("The Supreme Court has made it clear that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney's fees under federal statutes that provide for such fees."); see also Shaw, Licitra, Parente, Esernio & Schwartz, P.Z. v. Travelers Indemnity Co. (In re Grant Associates), 154 B.R. 836, 843 (S.D.N.Y. 1993) (noting that the lodestar standard had been adopted by most courts calculating fees under section 330(a), and that "[g]iven the similarity in context and language between the two statutes, the same standard should apply" to fees under section 506(c)); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 21-22 (Bankr. S.D.N.Y. 1991). Courts calculate the lodestar amount by multiplying the number of hours reasonably expended by the attorney's reasonable hourly rate. See Drexel, 133 B.R. at 22 (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,

478 U.S. 546, 565 (1986)). In assessing the reasonableness of a compensation request, there is a "strong presumption" that an attorney is entitled to the lodestar fee. Id.

25. In the instant case, RBLGGG respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary and appropriate for and beneficial to the orderly administration of the Debtor's estate, were in the best interests of the Debtor's estate, creditors and other parties in interest and resulted in a confirmed plan of reorganization within one year of the Commencement Date. Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The services were performed with expedience and in an efficient manner and, accordingly, RBLGGG submits the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtor, its estate, and all parties in interest.

26. Whenever possible, RBLGGG sought to minimize the costs of its services to the Debtor. A review of the attached schedule of professionals reflects that the majority of work was performed by two attorneys with the assistance of one junior associate to handle more routine aspects of case administration which also minimized the costs of intra-RBLGGG communication and education about the Debtor's circumstances.

27. In sum, RBLGGG submits that the services rendered by RBLGGG were necessary and beneficial to the Debtor's estate and were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved, and approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

## CONCLUSION

**WHEREFORE**, RBLGGG respectfully requests (i) a final award of compensation for professional services rendered during the Compensation Period in the amount of $292,552.00, and reimbursement of $3,191.34 of the actual and necessary expenses RBLGGG incurred during the Compensation Period; and (ii) such other and further relief as this Court deems just and proper.

Dated: New York, New York
      July 30, 2013

                                      **ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C.**
                                      **Attorneys for the Debtor**
                                      875 Third Avenue
                                      New York, New York 10022
                                      Tel. No.: 212-603-6300

                                      By: _____
                                                  A. Mitchell Greene