ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone: (212) 603-6300
Facsimile: (212) 956-2164
A. Mitchell Greene, Esq.
*Attorneys for the Reorganized Debtor*

Hearing Date and Time:
August 15, 2013 at 10:00 a.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X

In re:

**EMMONS-SHEEPSHEAD BAY DEVELOPMENT, LLC,**

Debtor.
-------------------------------------------------------- X

Confirmed Chapter 11

Case No.: 12-46321 (ESS)

## DEBTOR'S OBJECTION TO MOTION OF ALBERT WILK D/B/A WILK RE, ALEX DIKMAN AND METROPOLITAN ESTATES TO REOPEN CONFIRMATION PROCEEDING, VACATE ORDER CONFIRMING PLAN & RECONSIDER RELIEF UNDER RULE 9023 AND 9024 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

TO THE HONORABLE ELIZABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:

**Emmons-Sheepshead Bay Development, LLC,** the reorganized debtor herein (the "**Debtor**"), by its attorneys, **Robinson Brog Leinwand Greene Genovese & Gluck P.C.**, hereby submits this Objection to the Motion of Albert Wilk d/b/a Wilk RE, Alex Dikman[1] and Metropolitan Estates to Reopen Confirmation Proceeding, Vacate Order Confirming Plan & Reconsider Relief Under Rule 9023 and 9024 of the Federal Rules of Bankruptcy Procedure (the

---

[1] As a threshold matter, the claims filed by Albert Wilk, Claim No. 11 and Alex Dikman, Claim no. 13 in their individual capacity have been expunged by order of this Court, and therefore they have no standing to seek the relief requested in the Motion to Vacate the Confirmation Order. The remaining claims of Metropolitan Estates on its own behalf and in a derivative capacity and the claim of Wilk Real Estate remain subject to pending claims objections.

{00636011.DOC;1 }614259-2

"Motion to Vacate Confirmation Order") and respectfully represents as follows:

## BACKGROUND

1. On August 30, 2012 (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As at the Petition Date, the Debtor was the owner of the real property located at 3112-3144 Emmons Avenue, Brooklyn, New York (the "Property") and the sponsor of the condominium development at the Property known as The Breakers at Sheepshead Bay Condominium. The Debtor's second amended plan of reorganization (the "Plan") was filed on April 5, 2013 and confirmed by order entered on July 8, 2013 (the "Confirmation Order"). The Reorganized Debtor owns approximately 49 unsold residential units, 43 parking spaces and a marina at the Property.

2. The Property was originally owned by Emmons Avenue LLC, an affiliate of the Debtor. Emmons Avenue LLC and the Debtor were parties to a lease dated December 29, 2004, which provided the Debtor with an option to purchase the Property. Pursuant to ACRIS records, the lease and memorandum of lease were terminated and the Property conveyed to the Debtor in 2008. Both Emmons Avenue LLC and the Debtor were obligated on the various loans extended by TD Bank, N.A. ("TD") in connection with the acquisition, construction and development of the condominium project.

3. TD was the Debtor's secured lender as of the Petition Date and the plaintiff in a series of litigations against, amongst other defendants, Emmons Avenue LLC and the Debtor in connection with the various loans that were extended for the acquisition and construction of the Property. On or about October 16, 2012, TD assigned its various mortgages and related loan

documents to SDF17 Emmons LLC ("SDF").  Pursuant to the terms of the Plan, SDF agreed to reduce and fix the principal amount of its secured claim from $33,094,638.97 to $28,000,000.

4. The Property is located in Sheepshead Bay, Brooklyn, New York and suffered extensive damage as a result of Hurricane Sandy.  Since the storm, the Debtor, in conjunction with SDF, has worked to repair the damage to the Property including repairs to both the individual residential units and the condominium common areas in order to restore the Property to pre-Hurricane Sandy condition and be in a position to commence marketing and sales of the remaining unsold units.

**METROPOLITAN ESTATES AND EMMONS AVENUE LLC**

5. Upon information and belief, Metropolitan Estates ("Metropolitan") is in the business of providing business funding; Alex Dikman ("Dikman") is its President and Albert Wilk is its Vice President.  Upon information and belief, Albert Wilk is also a real estate broker doing business as Wilk Real Estate Ltd. ("Wilk" and hereinafter with Metropolitan and Dikman, the "Metropolitan Group").

6. In or about January 13, 2005, Metropolitan and Emmons Avenue LLC, the then owner of the Property, entered into an agreement (the "Metropolitan Agreement")  whereby Metropolitan was to contribute the sum of $1,500,000.00 to Emmons Avenue LLC to assist in the development of the condominium project in exchange for a 10% equity interest.  Under the Metropolitan Agreement, Metropolitan was to receive the return of its initial contribution as well as an additional $1,500,000.00 from the profits, for a total return of $3,000,000.00.  Repayment to Metropolitan on account of its investment was to be made subsequent to repayment to the acquisition and construction lender. Once the lender was paid off, Metropolitan had an option to

place a lien on three (3) of the condominium units, to be selected by Emmons Avenue LLC, which liens were to be removed upon repayment of the principal advance. The repayment to Metropolitan was to be funded via commissions from sales of condominium units earned by Wilk who was to be engaged as the exclusive broker for the condominium project. Upon receipt of the aggregate sum of $3,000,000.00, Metropolitan would not be entitled to any further compensation and would relinquish its 10% equity interest. The Metropolitan Agreement was amended in April 2009 by a written agreement to increase the commissions due Metropolitan on future sales in order to expedite the return of its investment.

**THE STATE COURT ACTION**

7. On August 29, 2011, the Metropolitan Group commenced an action in the Supreme Court of the State of New York, Kings County, captioned: <u>Metropolitan Estates, Inc., Alex Dikman and Albert Wilk d/b/a Wilk Real Estate, Ltd, all Individually and Derivatively On Behalf of Emmons Avenue LLC</u>, and assigned Index No. 20525/11 (the "State Court Action"), asserting various causes of action, including, but not limited to, breach of contract, breach of fiduciary duty, fraudulent conveyance, unjust enrichment and a constructive trust against the Property as against Emmons Avenue LLC and the Debtor, amongst other defendants. In the Decision and Order of the Honorable Gloria Dabiri dated June 15, 2012, the individual plaintiffs' cause of action for a constructive trust against the Property was dismissed, and the defendants' request to cancel the plaintiffs Notice of Pendency was denied. Other aspects of the State Court Action, including the determination on plaintiff's other claims, were stayed as a result of the Debtor's bankruptcy filing. The State Court Action has not been fully adjudicated and Debtor is not aware of any substantive decisions having issued since the June 25, 2012 decision.

However, on July 31, 2012, an order to show cause was signed by the Honorable Gloria Dabiri, copy attached, which is returnable on August 16, 2013, , which appears to be seeking similar forms of relief against the non-debtor defendants in the State Court Action.

## THE MOTION TO VACATE THE CONFIRMATION ORDER

8. On July 17, 2013, the Metropolitan Group, by its new counsel, filed the Motion to Vacate the Confirmation Order, seeking various alternative forms of relief in its title: Notice of Motion to Reopen Confirmation Proceeding, Vacate Order Confirming Plan and Reconsider for Relief under Rule 9023 and 9024 of the Federal Rules of Bankruptcy Procedure.

9. The Debtor submits that the Motion to Vacate the Confirmation Order should be denied for several reasons as set forth below.

## THE PLAN HAS BEEN SUBSTANTIALLY CONSUMATED:

10. The Plan has been substantially consummated. The confirmation order by its terms was immediately final and the Plan went effective. The lender, SDF has funded the unsecured creditors fund in the amount of $100,000; executed and processed the amended and restated mortgage for recording; arranged for payment of the outstanding amounts due the Office of the United States Trustee including amounts related to Plan payments; and funded the amounts required for Professional Compensation which amounts will only be disbursed upon entry of an order authorizing payment of fees and reimbursement of expenses. Simply on a procedural basis, the Motion to Vacate the Confirmation Order is mooted out because of the substantial consummation of the Plan and therefore should be denied.

## THE MOTION FAILS TO MEET THE STANDARDS OF 9023 AND 9024

11. It is further submitted that the Motion to Vacate the Confirmation Order should be denied as it fails to establish any grounds to reopen, reconsider or vacate the confirmation order as required by Bankruptcy Rules 9023 and 9024. A motion for reconsideration is governed by Bankruptcy Rule 9023 which incorporates Rule 59 of the Federal Rules of Civil Procedure. Judge Martin Glenn set forth in a decision issued on August 12, 2012 in the matter: *In Re Barquet Group, Inc.*, Case No. 11-13116 (MG), the standard for reconsideration as follows:

> Under Bankruptcy Rule 9023, "reconsideration is proper 'to correct a clear error of law or prevent manifest injustice.'" *Munafo v. Metro. Transp. Auth.*, 381 F. 3d 99, 105 (2d Cir. 2004) (internal citations omitted). "Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Key Mechanical Inc. v. BDC 56 LLC* (*In re BDC 56 LLC*), 330 F.3d 111, 123 (2d. Cir 2003) (internal quotation marks and citation omitted). A motion for reconsideration may not be used "to enable a party to complete presenting his case after the court has ruled against him." *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995).

*In re Barquet Group, Inc.* 477 B.R. 454 (Bankr. S.D.N.Y. August 12, 2012).

12. In a case where this Court denied a motion to reconsider, Judge Stong stated that:

> [m]otions to reconsider should be the exception, not the rule, and successful motions to reconsider are the exception still. The yardstick against which such relief is measured is an exacting one, the burden faced by a movant is high, and the grounds for such relief are narrow indeed, because reconsideration is at odds with the principle of finality and "the just, speedy and inexpensive determination of every case and proceeding. FED.R. BANKR. P. 1001.

*In re Taub*, 421 B.R. 27 (Bankr. E.D.N.Y. December 11, 2009).

13. The Motion to Vacate the Confirmation Order does not satisfy the "exacting" requirements for its success. No "controlling decisions or data that the court overlooked" has been provided to support the relief requested. The Motion to Vacate the Confirmation Order

simply restates prior allegations and objections raised by the Metropolitan Group which objections were continuously overruled by this Court. The Debtor presented, solicited votes and confirmed the Plan, over the objection of the Metropolitan Group, whose objection at the confirmation hearing was limited specifically to the issue of whether the plan was proposed in good faith in accordance with Section 1129(a)(3) of the Bankruptcy Code. Nothing is presented in the Motion to Vacate the Confirmation Order that meets the standards set forth in the Bankruptcy Rules and decisions cited above that would lead to a different conclusion or that requires reconsideration of the Confirmation Order.

14. A motion for relief from judgment or order is governed by Rule 9024 which incorporates Rule 60 of the Federal Rules of Civil Procedure. Rule 9024 provides for relief from an order on six (6) grounds, including: mistake, inadvertence, surprise or excuseable neglect; newly discovered evidence; fraud; where the judgment is void; where the judgment has been satisfied or otherwise released; or any other reason that justifies relief. The Motion to Vacate the Confirmation Order does not present any information or any bases that satisfies these enumerated grounds.

15. There has been no change in law, no new evidence proffered and no manifest error in law in the entry of the Confirmation Order. Accordingly, the Motion to Vacate the Confirmation Order fails on every level to meet the required standards under the provisions of either Bankruptcy Rule 9023 or 9024 and must therefore be denied.

**SUBSTANTIVE DUE PROCESS**

16. The Motion to Vacate the Confirmation Order appears to be based primarily upon the Metropolitan Group's assertion that their due process rights were somehow compromised.

The mere suggestion that the Metropolitan Group's due process rights were compromised or deprived in any manner is counter to the record of the case in general and the confirmation hearing in particular. The record of the confirmation hearing and the fact that the hearing took place over a period of several hours and did not conclude until after 9:00 p.m. on the evening of June 27th are clear evidence that the movant's assertions are unfounded. The Metropolitan Group, who has been represented during the Debtor's case by 3 prior attorneys, each of whom appeared in the case and before this Court over the course of the chapter 11 proceeding, and whose principals have appeared at the majority of the hearings, were well aware of and actively participated in the case and the confirmation process. This included a series of last minute filings the evening prior to the scheduled confirmation hearing, that were well outside of the court ordered filing deadlines. That their confirmation objection, filed on the eve of the confirmation hearing, was considered at all by this Court is further evidence that the Metropolitan Group was provided with a full and fair opportunity to be heard. That the Metropolitan Group was not prepared to proceed is not a valid excuse or basis for reconsideration or relief from the confirmation order that this Court should consider. Local Bankruptcy Rule 9014 is abundantly clear and explicit that in the context of a confirmation hearing, the parties are to be prepared to proceed with an evidentiary hearing.

17. After a series of legal, tactical and strategic misfires, the Motion to Vacate the Confirmation Order is simply the Metropolitan Group's latest attempt to unravel the Debtor's case. The Metropolitan Group was provided every opportunity to participate in this case. The Metropolitan Group was also party to extensive settlement negotiations with the Debtor and SDF which were undertaken in an effort to resolve their claims in order to proceed with a consensual

confirmation hearing. Metropolitan Group elected not to settle which is certainly their prerogative. It is not however a valid basis to have this Court vacate, reopen or reconsider the entry of the confirmation order.

**CONSTRUCTIVE TRUST**

18. The Motion to Vacate the Confirmation Order then moves to a different argument that is based upon its own conclusory statement that the Property is not property of the estate and is being held in constructive trust. New York law requires four elements to prove a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment. *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 386 N.Y.S.2d 72, 351 N.E.2d 721 (1976). The party seeking to impose a constructive trust carries the burden of proving the facts warranting its imposition. *Cassidy v. Cassidy*, 309 N.Y. 332, 335, 130 N.E.2d 881, 882 (1955). In particular, the claimant has the burden to establish the original trust relationship; he must provide his title, identify the trust fund or property, and be able to trace the funds claimed to be transferred to the property over which it seeks to impose a constructive trust. *Majutama v. Drexel Burnham Lambert Group*, 142 B.R. 633, 637 (S.D.N.Y. 1992) (citing *Salisbury Inv. Co. v. Irving Trust Co.* (*In re United Cigar Stores Co.*), 70 F.2d 313, 316 (2d Cir. 1934)). The State Court did not rule that the Metropolitan Group in their derivative capacity had proven a constructive trust, only that the State Court complaint sufficiently alleged the elements of a constructive trust. Mere allegation is insufficient to rely upon in a bankruptcy context. Furthermore, the imposition of a post-petition constructive trust is not an appropriate bankruptcy remedy. *In re Omegas Group,* 16 F.3d 1443, 1449 (6th Cir. 1994)("[u]nless a court has already impressed a constructive trust upon certain assets or a legislature has created a

specific statutory right to have particular kinds of funds held as if in trust, the claimant cannot properly represent to the bankruptcy court that he was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor"); *In re Paul J. Paradise & Assocs.,* 217 B.R. 452, 456 (Bankr. D. Del. 1997) (adopting the reasoning of *Omegas Group*, and calling it the majority view), aff'd 249 B.R. 360 (D. Del. 2000).

19. A constructive trust remedy would be inequitable in the multi-party nature of a bankruptcy proceeding. The imposition of a constructive trust disrupts the bankruptcy process, allowing one creditor to receive more than its share of the debtor's assets at the expense of all other creditors. *See In re First Cent. Fin. Corp.* 377 F.3d 209, 217-18 (2d Cir. 2004) ("The constructive trust doctrine can wreak … havoc with the priority system ordained by the Bankruptcy Code.")(citation omitted).

> [T]he effect of a constructive trust in bankruptcy is to take the property out of the debtor's estate and to place the constructive trust claimant ahead of other creditors with respect to the trust *res* …. It is therefore not the debtor who generally bears the burden of a constructive trust in bankruptcy, but the debtor's general creditors. This type of privileging of one unsecured claim over another clearly thwarts the principle of ratable distribution underlying the Bankruptcy Code. As a consequence bankruptcy courts have been reluctant, absent a compelling reason, to impose a constructive trust on the property in the estate."

*In re Flanagan*, 2007 U.S. App. LEXIS 23622, 22 (2nd Cir. 2007).

20. In addition to there being no imposition of a constructive trust pre-petition and no determination post-petition, the Metropolitan Group is now attempting, inappropriately, to elevate their equity and/or unsecured claims into a constructive trust claim post-confirmation in an effort to grant them priority over other creditors of the Debtor's estate. At best, the

Metropolitan Group holds equity or unsecured claims against the Debtor. However, even were a determination made that the Metropolitan Group was somehow entitled to the imposition of a constructive trust or other equitable lien, the claim would remain junior to valid senior interests. Under no circumstances would the Metropolitan Group's claims be elevated to prime the valid first priority mortgage held by SDF. Accordingly, the argument suggesting that a constructive trust has been imposed is both factually inaccurate and provides no basis for this Court to reconsider or vacate the Confirmation Order.

**PROPERTY OF THE ESTATE**

21. As of the Petition Date and as of the Confirmation Date, title to the Property was in the name of the Debtor. The Debtor is the owner of record of the Property. No constructive trust or equitable lien was imposed or established prior to the Petition Date which would in effect remove the Property from being property of the estate. Reconsideration of the confirmation order on the basis that movant's question whether the Property is property of the estate is not an appropriate remedy. To the extent the Metropolitan Group questioned the conveyance of the Property, the ownership of the Property and/or whether the Property is property of the estate, they were afforded every opportunity in the Debtor's case to file the appropriate motion or commence an appropriate adversary proceeding relating to the Property yet they failed to do so. Metropolitan Group's derivative claim for the imposition of a constructive trust is simply that, a claim for a constructive trust for which there has been no final determination by any court. The Property is property of the estate pursuant to Section 541 of the Bankruptcy Code and appropriately reorganized in the context of the Debtor's Plan.

**PLAN PROPOSED IN GOOD FAITH**

22. The record of the confirmation hearing is abundantly clear that the Metropolitan Group had every opportunity to be heard and that their objection to confirmation was with respect to 1129(a)(3) and whether the Plan was proposed in good faith and not by any means forbidden by law. There is nothing in the Motion to Vacate the Confirmation Order that expands or provides new information that is directed to the determination of whether the Plan was proposed in good faith and meets the exacting standard required to succeed in the relief requested.

23. Returning to arguments that were raised, but not fully adjudicated in the State Court and attempting to relitigate issues that were not part of the record of the confirmation hearing cannot serve as a proper basis for the reconsideration, vacatur or to reopen the confirmation hearing. More importantly, they have no relation to whether the plan was proposed in good faith.

24. Speculation regarding the amount of the lender's secured claim and allegations regarding closings and closing statements from which the Metropolitan Group received the aggregate amount of $1,434,661 in commissions are similarly not relevant to whether the Plan was proposed in good faith.

25. The Debtor proposed a plan which provides for payment in full to secured tax claims, payment of administrative claims including United States Trustee fees, continued financing of the construction and repairs needed to restore the Property after the extensive damage caused from Hurricane Sandy (which inures to the benefit of the condominium association and the residents at the condominium) and a guaranteed fund of $100,000 for pro rata distribution to unsecured creditors. The Plan was negotiated at arm's length by and between the

Debtor and its lender, SDF and received the full support of all constituencies other than the Metropolitan Group. The record reflects the extraordinary efforts by this Court to afford the Metropolitan Group every opportunity to participate in this case and specifically in the confirmation hearing, thus belying any claim they assert to the contrary.

26. It must finally be noted that the Motion to Vacate the Confirmation Order was not well considered. The Metropolitan Group fails to recognize that the Property is and was encumbered by mortgages for which both the Debtor and Emmons Avenue were obligated. If the Confirmation Order is revoked, vacated or otherwise overturned, the secured creditor will simply proceed with its foreclosure action, for which stay relief has already been granted. In this circumstance, the result would be no distribution at all to any creditors. Therefore, the unintended result of the relief requested being granted will leave all creditors junior to SDF being wiped out in the foreclosure proceeding.

**CONCLUSION**

27. As stated herein, the Motion to Vacate the Confirmation Order is simply the latest in a series of objections filed by the Metropolitan Group in this Debtor's case to obtain for itself a better result than the Plan provides, yet it fails to establish any new information or any valid basis for the Confirmation Order to be vacated or stayed or confirmation to be reconsidered. The Motion to Vacate the Confirmation Order presents no new evidence, the record of the hearing was exhaustive and provided all parties with a fair opportunity to be heard and the objection that the Plan was not filed in good faith was thoroughly considered and overruled. The Plan has now been substantially consummated. The Confirmation Order was immediately final and the parties have taken the necessary steps to consummate the Plan including funding the unsecured creditors

fund; filing the amended and restated mortgage; arranging for payment of outstanding United States Trustee fees; and funding amounts necessary to satisfy professionals, subject to approval of the fee application on file. The Plan has gone effective in accordance with its terms and subject only to final adjudication of the pending fee application and claims objections, the Debtor is prepared to submit a final decree closing this case.

28. The Debtor respectfully submits that for all of the reasons stated herein that the Motion to Vacate the Confirmation Order should be denied in its entirety.

**WHEREFORE**, the Debtor respectfully requests entry of an order denying the Motion to Vacate the Confirmation Order and granting the Debtor such other and further relief as is just and proper.

**DATED:** New York, New York
August 8, 2013

**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.: 212-603-6300

By: /s/ A. Mitchell Greene
 **A. Mitchell Greene**