UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
IN RE:                                           CASE NO. 12-46321-ESS
EMMONS-SHEEPSHEAD BAY DEVELOPMENT LLC

           Debtor                         Chapter 11
----------------------------------------------------------------X

## REPLY BRIEF
## TO
## SDF 17 EMMONS LLC AND DEBTOR'S OBJECTIONS

      Emmons Avenue LLC as derivatively, Albert Wilk, Alex Dikman, Metropolitan Estates (collectively the "Movants") through their counsel Karamvir Dahiya, Esq. respectfully reply to the objections filed by the Debtor and the secured creditor to the motion under Rule 9023, 9024 and Constitutional Due Process.

      The "Reorganized Debtor" team ("RD Team") emphasizes upon a hearing that lasted, "until after 9:00 P.M. on the evening of June 27th," and a presence of "3 prior attorneys," along with the "principals", further summarily concluding that the movants were "provided with a full and fair opportunity to be heard." RD Team's contention of what was being considered is very telling about what was not considered. RD's approach overlooks the principle and process. One was the very character of the property being administered as Estate, i.e. the principle. Second, the proponents not providing the essential discovery to have an informed objector/participant in this process of meaningful plan confirmation and, third Court not having considered the impact of such recalcitrance on behalf of RD team for not providing such disclosure. The plan proponents failed to reflect transparency. *Not only must fairness be done; it must also be seen to be done.* One hearing lasting until 9 P.M. reflects nothing more than expediency brought in with a Bank's counsel threatening to withdraw the financing if the plan was not confirmed by 5:00 PM. **Due Process checks such expediency and does not allow it.**

      Due process is not mere application of legal rules, for due process entails more than such rules. Due Process Clause of the Fifth Amendment is a check on all—Legislature, Executive and

1

or Judiciary—law as enacted, enforced and or interpreted must be rational, non-oppressive and even-handed. *Murray's Lessee v. Hoboken Land& Improvement Co.*, 59 U.S. (18 How.) 272 (1855) (describing due process as a "restraint on the legislative as well as on the executive and judicial powers of the government, [that] cannot be so construed as to leave congress free to make any process 'due process of law,' by its mere will").

The RD team talks about their adhering to the bankruptcy rules for the confirmation of plan. But '"due process" unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." [Due process] is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319 (1976). And process is not a creature of code statutes, it flows from the Constitution itself.

While court might use or define the bankruptcy process; it is the Constitution that defines the due process. While RD might emphasize or rely on calling due process of law that there was confirmation hearing preceded by disclosure etc., the basics of chapter 11 process, the steps as announced in the title 11 however that alone on its own is a rejected view. See *Hurtado v. California*, 110 U.S. 516, 528 (1884) ("[D]ue process of law must mean something more than the actual existing law of the land...."). Instead, the Supreme Court has held that Due Process principle protects against both types of actions established either through the Congressional statutory enactments and a process established by it. *United States v. Salerno*, 481 U.S. 739, 746 (1987) (observing that Due Process Clause "protects individuals against two types of government action" through substantive due process and procedural due process doctrines).

Participation by the Movants was one elements of the due process. They kept pleading for discovery, however it was not provided, owing to which they could not have a meaningful participation. Our discovery system is meant to ensure that meaningful participation thus a basic of adversary system of justice. The process must precede the deprivation. A confirmation of plan which cut off everything renders the pending motions for discovery and other objective redundant.

2

It is not clear if *Brady* and *Giglio* principles are applicable to civil cases, but their importance as an essential element of due process remains and the civil discovery is a tool to accord the same relief. Movants were not provide all the information. *Brady v. Maryland*, 373 U.S. 83 (1963). *Giglio v. United States*, 405 U.S. 150 (1972).

**Constructive Trust Issue:**

The state court has found that the grounds are made out from the complaint for a constructive trust. The property used as property of the estate is not property of the estate. There is no doubt that this debtor should have prevailed on both state and federal grounds in order to be a proper candidate for a bankruptcy relief. Seeking bankruptcy protection does not transmute the character of the property that the debtor purports to bring to the estate. The movants had property interest established, pursuant to the New York state laws in having a constructive trust declared. *Board of Regents v. Roth*, 408 U.S. 564 (1972)(holding that property interests are crated and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9-12 (1978) (holding that state law prohibiting the termination of utility service except "for cause" created a property interest in the non-termination of such service). There was and is no competing federal interest which would deny recognition of property interest in such a claim to constructive trust. These property rights are not only protectable under the Fourteenth Amendment, they are equally entitled to protection under the Fifth Amendment.

The RD Team suggest inappositely that this Court not consider this as property of the constructive trust. However they overlook the essentials. RD Team misconstrues the law and procedure related to constructive trust. Bankruptcy law in itself does not displace or replace or create new property rights. Property rights continues to be governed by state law. *Butner* v. United States, 440 U.S. 48 (1979) (Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law). By having the debtor rush to the bankruptcy court and thus deemed it to be purged of any wrong doing is contrary to the bankruptcy law. "[T]here is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason

3

of the happenstance of bankruptcy." Id. citing *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609 . Even the Erie rule for that matter is "rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in the federal court." *Hanna v. Plume*, 380 U.S. 460, (1965). The same principles govern here. "The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result." *Guaranty Trust Co. v. York* 326 U.S. 99, (1945) as a Certiorari to the Circuit Court of Appeals for the Second Circuit.

Further, just because a debtor has sought bankruptcy protection, it does not mean, that remedies sought in the state court cannot be sought in bankruptcy forum. Bankruptcy is not a moratorium on substantive state rights. There is no doubt that the bankruptcy court operating under title 11 will have a procedure and their own rules, however that does not displace state substantive laws as rightly put by Supreme Court:

> *Congress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes or Constitution of the United States; but it has never essayed to declare the substantive state law, or to abolish or nullify a right recognized by the substantive law of the state where the cause of action arose, save where a right or duty is imposed in a field committed to Congress by the Constitution. On the contrary it has enacted that the state law shall be the rule of decision in the federal courts.*

*Ibbach v. Wilson & Co.*, 312 U.S. 1 (1941)

Congress clearly has an authority under Full Faith and Credit Clause and or bankruptcy clause to federalize choice of law by enacting conflicts rules binding on the state as well as federal courts. However it has not yet created substantive property rights laws meant for bankruptcy forum. New York State has a legitimate state interest in its enactment of laws regarding fraudulent conveyances and or common law relief, which cannot be overlooked. To the extent, the bankruptcy court decides property rights based on state law, it is governed by the same principles.

4

The issue of constructive trust "owes its existence" to New York state, not to the United States. In this bankruptcy forum, the court enforces state created rights by rules of procedure which it has acquired from Congress and which are or may not be identical. This court is only another state court when it comes to decide a state created, *Butner*, right issues. The bankruptcy court cannot substantially affect the enforcement of that right, if it purports to follow the state laws regarding property interest. The Movants had properly filed the lawsuit for enforcement of such rights in the state court, prior to the bankruptcy filing. See *Bernhardt v. Polygraphic Company of America, Inc.* 350 U.S. 198 (1956) (the nature of the tribunal where suits are tried is an important part of the parcel of rights behind a cause of action). It is clear that when the non-bankruptcy law is state law (as it most often is), the *Erie* doctrine and *Butner*, dictates that federal courts in bankruptcy must respect the limits of the Bankruptcy Power and defer to state law, even if such state law produces a result that is contrary to what a court thinks is proper bankruptcy policy.

Now we have to see if there is any conflict between the this state created constructive trust and or other powers of or granted under the bankruptcy code. Instead of conflict, the Congress has made it clear the application of "applicable law," "non-bankruptcy law," "state law," "local law," "common law," and other provisions. Pre-emption does not result until the Congress has made a clear statement. There is a presumption against preemption.

RD Team citation of *In re First Cent. Fin. Corp.*, 377 F.3d 209 (2d Cir.2004) is also of not much help, rather it supports the movant's position:

> In this Circuit, we have rejected the notion that bankruptcy law trumps state constructive trust law: "[W]hile the outer boundaries of the bankruptcy estate may be uncertain, `Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.'" *In re Howard's Appliance Corp.*, 874 F.2d at 93 (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)).

Id. at 212

The Second Circuit advising to act cautiously is when there are several competing creditors which are missing here. Further FCFC case dealt with the Chapter 7 trustee marshalling assets, however however here it is the debtor who is retaining the property for distribution and

5

essentially enriching the administrative claimant, the secured creditor and debtor's principal. Further, the claim for constructive trust did not arise for the first time in the bankruptcy court, it arose pre-petition. See *In re First Cent. Fin. Corp* ("we do not disturb the general rule that constructive trusts must be determined under state law, we believe it important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not . . . .").

There is no doubt that motion to reconsider must not be a response to all judgment. However it is definitely a vehicle to prevent miscarriage of justice. *U.S. v. All Funds on Deposit in Any Accounts Maintained at Merrill Lynch, Pierce, Fenner & Smith*, 801 F. Supp. 984 (E.D. N.Y. 1992), aff'd, 6 F.3d 37 (2d Cir. 1993) (emphasizing the court's power to grant a new trial, even where the verdict was justifiable, to prevent a miscarriage of justice). The movant is not raising new arguments, but wants a fair hearing to their grievances. The movants were deliberately deprived by the debtors and its team from providing the necessary discovery, which would have enabled them to be an informed, meaningful participant in the confirmation process. Further, the property as being not property of the estate for reasons of fraudulent transfer and a counsel threatening withdrawal of funding if the plan is confirmed the same day treating it as such was an error of law and is prejudicial is a ground for a new hearing on the issue of confirmation of plan. The irony of the situation was that none benefitted from such confirmation other than the principal (personal guarantee and home loan being forgiven as a quid pro quo) of the debtor, its counsels and SDF, the secured creditor. No benefit came to any other creditors. The Movants contention is not lack of benefit to themselves, it is that process used did not consider their grievances. Treating a property acquired by the debtor fraudulently can't be treated as property of the estate and that in itself is a error of law. Error of law is a ground for motion to reconsider. *U. S. for Use and Ben. of Evergreen Pipeline Const. Co., Inc. v. Merritt-Meridian Const. Corp.*, 890 F. Supp. 1213, 1223 (S.D. N.Y. 1995), judgment aff'd in part, vacated in part on other grounds, 95 F.3d 153 (2d Cir. 1996).

The Debtor's team exhorts the remarks of this Court in *In Re Taub*, 421 B.R. 27 (Bankr. E.D.N.Y. 2009) that "motions to reconsider should be the exception, not the rule . . . " However, "the principle of finality" and "the just, speedy and inexpensive determination of every case and

proceeding," do not override merits of what is being adjudicated and least of all the due process concerns. *Fuentes v. Shevin*, 407 U.S. 67, 90 n. 22 (1972) (stating that "**procedural due process is not intended to promote efficiency or accommodate all possible interests: it is intended to protect the particular interests of the person whose possessions are about to be taken**"). Further, "hearing always imposes some costs in time, effort, and expense, and it is often more efficient to dispense with the opportunity for such a hearing. But these rather ordinary costs cannot outweigh the constitutional right." Id.

Jerold Feuerstein, the Learned Counsel appearing for SDF has his own unfounded reservations. Stay pending appeal is not "frivolous" [moot]—we are within time. The anxiety of unsigned "Inspection Report" has been addressed, now we have an affidavit of the party inspecting the properties. See Docket # 138.

The Movants pursued diligently to be informed about what this entire case and numbers were about, however they were deterred with maneuvering by the debtors and its team. Mr. Feuerstein puts down the skeletal aspect of events but does not tell us what did not happen. The Movants did not have the benefits of merits, numbers and information necessary to become meaningful participant. We reproduce what is on the record.

On February 28, 2013, Alla Kachan, attorney for creditors Albert Wilk, Alex Dikman and metropolitan estates filed a Motion for a 2004 Examination of the Debtor, Emmons Ave LLC, Jacob Pinson and T.D. Bank. [See Doc. No. 50]. Specifically, Metropolitan requested accounting and disclosure from TD Bank N.A. of how the final figures of indebtedness were arrived. There is a discrepancy as to the numbers alleged by the Debtor. Further, Metropolitan wanted to investigate the Debtor's finances surrounding the operation of its' business, use of the funds received from Metropolitan, the activities that resulted in Emmons insolvency, payment default and subsequent foreclosure proceedings.

On April 11, 2013, Attorney Kachan filed an Amended Notice of Motion and Motion for 2004 Examination. Attorney Kachan also requested an extension of time to reject the Debtor's plan for reorganization. [See Doc. No. 81]

On April 26, 2013, this Court issued a scheduling order directing the parties to serve their respective notices of depositions or notice of a 2004 examination on or before June 21, 2013. Further, the order directed the parties to appear for a status conference on May 28, 2013 and all discovery should be due by June 28, 2013. [See Doc. No. 95].

Sometime between this Court's April 26, 2013 Order and June 24, 2013, the parties entered into settlement negotiations which halted the discovery. After an unsuccessful attempt at negotiations, Attorney Kachan filed a letter on June 24, 2013. [See Doc. No. 110]. In the letter, Kachan requests the Court to a brief extension of time to file a motion to compel discovery and to reject the plan. During negotiations, Kachan tried resolve the disputes between the party and in good faith. However, Kachan realized that the settlement negotiations were nothing more than an attempt for the Debtor to buy some time and gain a tactical time advantage. Kachan further advises the Court how critical the information being sought by her clients is to this case. Kachan also sheds light to new evidence which suggests that the Debtor intentionally failed to provide accurate sales price of the units sold.

On June 25, 2013, Kachan filed a Motion to Extend Time in Order to Compel Discovery. [See Doc. No. 112]. The next day, Kachan filed a Motion to Compel Discovery and an Objection to the Confirmation Plan. [See Doc. No.'s 114 and 115].

According to the Debtor, Kachan's Objection is untimely. However, the Debtor fails to take into consideration that Kachan entered into good faith settlement negotiations with the Debtor and filing Motions to Compel Discovery or Objections to Discharge would be contrary to the goals being achieved in settlement. However, Kachan immediately filed the Objection within two days of realizing that any negotiations for settlement between the parties will be unfruitful.

During the hearing regarding the confirmation of the plan, Kachan again advised the Court on many different occasions the critical need to obtain discovery. For example, see page 22 of the transcript from the June 28, 2013 hearing:

it is my client's position that we are not at all ready, notwidtstanding, and we
appreciate the immediacy put forth by the debtor and the secured debtor, but we
do question the validity of that immediacy, but more importantly we feel that
because the plan, according to many factors that I will discuss today was not, has
not been proposed in good faith, the plan, and it cannot be confirmed today.

. . .in furtherance of that, when we started this process we had requested 2004
party and nonparty examinations and production of documents. We didn't get
very far at all in the discovery process. We got very, very deficient - - as seen in
my motion to compel - -responses from the debtor. And I think even more
crucial, and something that Ms. Schwartz omitted today when she spoke of my
opposition was that - - and something very new to my opposition that wasn't
there before, was a factor that only came to light recently as we were beginning
the process of discovery; there has been documents that came to light, that there
was at least one closing that we know of for sure which we have check and
evidence of, there was money taken, whats called under the table, meaning that
the amount indicated in the contract and the amount that was actually paid were
different.

Another example can be found on page 28 of the Transcript where Kachan once again reiterates the importance of discovery.

Your Honor, we initially asked for discovery because my clients felt - - my clients
learned of this one instance. They just don't have evidence of further instances,
but they do know but they don't have the checks to evidence it. And what I – and
what we were asking for discovery for, and the reason that we asked that the
debtor produce financial statements clos - -complete closing statements. And this
is not the only factor, Your Honor. There are several others that I will explain that
we also have learned about. . .

A third example comes from page 29 of the transcript:

the reason that we asked for discovery, and the reason that we asked for the
closing statements, for all the debtor's financials during the course of the closings
to be produced, is because we're also aware there was a construction company
that was being paid out of every closing. There - - the principal of the
construction company was present. None of these payments were reflected in any
of the closing statements . . .

Here there is no bigger goal that which was achieved at the cost of the movants moreover the Court should decline the "invitation to engage in a utilitarian comparison of public benefit and private loss." *United States Trust Co. of New York v. New Jersey* 431 U.S. 1 91977) (striking down state impairment of bond holders contract despite resulting gain to goals of better mass transit, energy conservation, and environmental protection).

The Movants pleaded for discovery and information at every stage of the case. They could not have the information which would have enabled them to present evidence, *Morgan v. United States*, 304 US. 1., 18 (1938), and confront and cross examine adverse parties, *Green v. McElroy*, 360 U.S. 474, 497 (1959). There were no extraordinary circumstances in this case to make such a rush through the bankruptcy court or to deny the privilege of such rights.

Based on the entire record it is clear that the Movants, whose property rights were being taken away under the name of bankruptcy law, could not become meaningful or informed participants; were denied the right to know about it by virtue of not having been given discovery by the debtor and team; were denied of a property right by treating fraudulently conveyed property as property of estate; thus warranting this court consideration in the interest of justice to set aside the order confirming the plan and or state pending appeal.

Dated: New York New York
August 14, 2013

Karamvir Dahiya, Esq. for Movants